## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHARLES CARLTON WALL**                          **CIVIL ACTION**

**VERSUS**                                        **NO.  03-1641**

**BURL CAIN, WARDEN**                             **SECTION "R"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.   The matter was remanded to the Magistrate Judge for consideration of the merits of the claims raised.[1]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* Title 28 U.S.C. § 2254(e)(2).[2]

---

[1]Rec. Doc. No. 14.

[2]Under Title 28 U.S.C. § 2254(e)(2), the District Court may hold an Evidentiary Hearing only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by an exercise of due diligence, and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

I.     **Factual Background**

The petitioner, Charles Carlton Wall ("Wall"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3]  On September 26, 1996, Wall was indicted by a Grand Jury in Tangipahoa Parish for the Second Degree Murder of Jeffery Lee, a man who had been living in Wall's mother's home.[4]

The record shows that on July 26, 1996, the victim, Jeffery Lee, was employed by Wall's mother, Doris Louise Brown Wall.[5]  That morning, Lee asked Mrs. Wall for permission to use the clothes dryer in her house in Kentwood, Louisiana.  Mrs. Wall gave Lee her keys.

According to the taped statement given by Wall to the police immediately after the shooting, he went that day to his mother's home carrying an assault rifle under his shirt.  He purchased the weapon the night before for $40 from a man in a barroom.  Wall saw Lee's car parked in the yard before he entered the house.  After entering the house, he unfolded the strap on the rifle and began searching the house.  When he came upon Lee, who was sleeping, Lee jumped up and asked what Wall was doing there.  Wall then shot Lee, not knowing whether Lee had a gun.  Wall also stated to police that he would have shot Lee anyway because of what Lee had done the night before.

He told police that, about three months earlier, Lee told a young boy to see Wall if he wanted to buy drugs.  Wall warned Lee not to send people to him to buy drugs.  Wall also threatened to kill Lee in front of one of Lee's co-workers.  Wall had a pistol and waited for the co-worker to get off

---

[3]Rec. Doc. No. 1.

[4]St. Rec. Vol. 1 of 7, Indictment, 9/26/96.

[5]The facts were taken from the opinion on direct appeal issued by the Louisiana First Circuit Court of Appeal. St. Rec. Vol. 1 of 7, 1st Cir. Opinion, 99-KA-1047, 3/31/00.

so that he could confront Lee alone. After waiting for a while and becoming more angry, Wall decided to leave.

After Wall gave his statement to the police, the police discovered the assault rifle and Lee's body inside of the Wall home. Lee was unarmed and had been shot seven times.

Wall entered a plea of not guilty and later changed that plea to not guilty by reason of insanity.[6] He nevertheless was found competent to proceed to trial and was found guilty as charged after trial by jury on September 16, 17, and 18, 1997.[7] At a hearing held on October 17, 1997, the trial court denied Wall's Motion for New Trial and sentenced him to life imprisonment.[8]

Wall's conviction became final five days later on October 22, 1997, because he did not seek timely reconsideration of his sentence or file a timely appeal from the conviction. *Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five day deadline for filing a notice of appeal under La. Code Crim. P. art. 914[9]); *McGee v. Cain*, 104 Fed. Appx. 989, 991-992 (5th Cir. July 28, 2004) (applying *Salinas v. Dretke*, 354 F.3d 425 (5th Cir. 2004), *cert. denied*, 541 U.S. 1032 (2004)) (a state conviction is final for AEDPA limitations purposes at the conclusion of the original period for seeking direct review and not at conclusion of an out-of-time appeal granted on application for post conviction relief).

---

[6]St. Rec. Vol. 1 of 7, Insanity Plea Minutes, 6/16/97.

[7]St. Rec. Vol. 1 of 7, Trial Minutes, 9/16-18/97; Verdict of the Jury, 9/18/97.

[8]St. Rec. Vol. 1 of 7, Sentencing Minutes, 10/17/97; Motion for New Trial, 10/14/97.

[9]At the time of petitioner's conviction, La. Code Crim. P. art. 914 required a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985). Article 914 was amended by Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal.

## II.    **Procedural Background**

Over one year later, on December 9, 1998, Wall filed a Petition for Post Conviction Relief or in the Alternative, Petition for an Out of Time Appeal claiming that his counsel abandoned his appeal which effectively denied him his right to an appeal.[10]  The Trial Court granted his request for an out of time appeal on December 14, 1998.[11]

On appeal to the Louisiana First Circuit Court of Appeal, Wall raised five assignments of error: (1) the Trial Court erred in finding that he had the capacity to proceed to trial; (2) the Trial Court erred in preventing him from introducing evidence of the victim's character; (3) and (5) the Trial Court erred in denying his motions for mistrial and for new trial based on the State's failure to provide the substance of his statement to Officer Yarborough; and (4) there was insufficient evidence to support the conviction.[12]

His conviction was affirmed by the Louisiana First Circuit on March 31, 2000, after the Court determined that his grounds for relief were without merit.[13]  Wall's subsequent writ application to the Louisiana Supreme Court was denied without reasons on November 27, 2000.[14]

On July 30, 2001, Wall filed another Petition for Post Conviction Relief raising seven grounds for relief:[15]

---

[10]St. Rec. Vol. 1 of 7, Petition for Post Conviction Relief or in the Alternative Petition for an Out of Time Appeal, 12/9/98 (signed 12/7/98).

[11]St. Rec. Vol. 1 of 7, Trial Court Order, 12/14/98.

[12]St. Rec. Vol. 1 of 7, 1st Cir. Opinion, 99-KA-1047, 3/31/00.

[13]*Id.*

[14]*State v. Wall*, 775 So.2d 446 (La. 2000); St. Rec. Vol. 1 of 7, La. S. Ct. Order, 2000-K-1203, 11/27/00.

[15]St. Rec. Vol. 7 of 7, Petition for Post Conviction Relief, 7/30/01 (signed 7/26/01).

(1)     he was denied the right to a fair trial when the prosecutor wrongfully
        instructed the jury on the legal presumption of insanity regarding a drug
        induced psychosis;

(2)     he was denied the right to effective assistance of counsel when his counsel
        failed to request a limiting instruction on the state's impeachment of its own
        witness, Ms. Brown, and he was denied the right to a fair trial when Judge
        Bennett failed to *sua sponte* give a limiting instruction regarding
        impeachment;

(3)     the trial court erred in instructing the jury on "specific intent" placing a
        mandatory presumption before the jury in violation of due process of law;

(4)     the trial court erroneously instructed the jury on reasonable doubt in violation
        of state law and the due process clause;

(5)     discriminatory practice in the grand jury foreperson selection process in
        violation of equal protection and the improper method of selecting the grand
        jury forepersons violated his right to a fair cross-section in the panel as well
        equal protection;

(6)     counsel was ineffective when he failed to file pretrial motions to quash the
        grand jury indictment based upon the discriminatory practices in the selection
        process;

(7)     the unconstitutionality of the grand jury's composition divested the court of
        jurisdiction over the case.

The Trial Court denied the Petition on August 8, 2001, finding as a matter of law that there

was no merit to the claims.[16]

Wall filed a Writ Application with the Louisiana First Circuit on August 31, 2001, seeking

review of the same claims.[17]  On March 8, 2002, the appellate court denied the Application on the

---

[16]St. Rec. Vol. 7 of 7, Judgment on Application for Post Conviction Relief, 8/8/01.

[17]*See* Rec. Doc. No. 1, Petition, 1st Cir. Writ Application (signed 8/20/01) (attached).  The filing date was
obtained from the Clerk of the Louisiana First Circuit Court of Appeal.

showing made.[18]  Wall's subsequent Writ Application to the Louisiana Supreme Court was denied
without reasons on April 21, 2003.[19]

In the meantime, on May 30, 2002, Wall filed a Motion for Subpoena Duces Tecum in the
Trial Court seeking copies of certain documents relative to the selection of juries and grand juries
in Tangipahoa Parish.[20]  The Trial Court denied the motion on June 6, 2002, noting that Wall's
appellate and post conviction delays had expired and that no civil action had been filed under the
Louisiana Public Records Act.[21]

Wall thereafter filed a Writ Application in the Louisiana First Circuit on July 3, 2002.[22]  The
Louisiana First Circuit denied the Application on October 18, 2002, for failure to demonstrate a
particularized need for the documents, for lack of a pending application for post conviction review
and no time left to file one, and for failure to qualify for relief under the Louisiana Public Records
Act.[23]

On December 11, 2002, Wall filed a Writ Application in the Louisiana Supreme Court
seeking review of that order.[24]  The Court denied the Application on October 17, 2003, for failure

---

[18]St. Rec. Vol. 1 of 7, 1st Cir. Order, 2001-KW-2101, 3/8/02.

[19]*State ex rel. Wall v. State*, 841 So.2d 780 (La. 2003); St. Rec. Vol. 1 of 7, La. S. Ct. Order, 2002-KH-1249, 4/21/03; St. Rec. Vol. 7 of 7, La. S. Ct. Letter, 2002-KH-1249, 5/6/02; Rec. Doc. No. 1, Petition, La. S. Ct. Writ Application (signed 3/25/02) (attached).

[20]St. Rec. Vol. 7 of 7, Motion and Order for Subpoena Duces Tecum, 5/30/02 (signed 5/28/02).

[21]St. Rec. Vol. 7 of 7, Trial Court Order, 6/6/02.

[22]The filing date for Writ No. 2002-KW-1448 was obtained from the Clerk of the Louisiana First Circuit.

[23]St. Rec. Vol. 1 of 7, 1st Cir. Order, 2002-KW-1448, 10/18/02.

[24]St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2002-KH-3013, 12/11/03 (showing postmark of 10/28/02).

to state a particularized need for the documents citing *State ex rel. Bernard v. Cr.D.C.*, 653 So.2d

1174, 1175 (La. 1995).[25]

## III.    **Federal Petition**

On June 6, 2003, while the later state proceedings were still pending, Wall filed a petition

for federal habeas corpus relief in which he raised 11 grounds for relief:[26]

(1)    The Trial Court erred in determining that petitioner was competent to stand trial;

(2)    The Trial Court denied petitioner the right to present a defense when it wrongfully determined that his statements to the police did not constitute evidence of an overt act;

(3)    The State violated the Louisiana Code of Criminal Procedure by failing to inform the defendant of the substance of his oral statements which the State intended to use at trial;

(4)    Insufficient evidence to convict based on evidence of insanity;

(5)    He was denied a fair trial because the prosecutor wrongly instructed the jury on the legal presumption of insanity regarding drug induced psychosis;

(6)    Ineffective assistance of counsel for failure to object or seek limiting instruction when the State used a prior conviction as impeachment evidence against a witness;

(7)    The trial court erred in its instruction on specific intent;

(8)    The trial court erred in its instruction on reasonable doubt because it did not instruct the jury to draw inferences from "the lack of evidence;"

(9)    Discrimination in the grand jury selection process;

(10)    Ineffective assistance of counsel for failure to file motion to quash the indictment based on grand jury discrimination; and

---

[25]*State ex rel. Wall v. State*, 855 So.2d 753 (La. 2003).

[26]Rec. Doc. No. 1.

(11)    The trial court lacked jurisdiction because of the grand jury discrimination which rendered the indictment invalid.

In its opposition, the State argued that claim numbers five, eight, nine, and eleven were procedurally barred from review and the remaining claims are without merit.[27]  In his reply memorandum, Wall disagreed with the State's position and requests an evidentiary hearing.[28]

## IV.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[29] applies to Wall's petition, which is deemed filed in this court under the federal "mailbox rule" on May 19, 2003.[30]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default"

---

[27]Rec. Doc. No. 5.

[28]Rec. Doc. No. 6.

[29]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Wall's federal habeas petition on June 6, 2003, when the filing fee was paid.  Wall dated his signature on the petition on May 19, 2003.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that Wall paid the filing fee does not alter the application of the mailbox rule to his pro se petition.  *Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

On April 14, 2004, the undersigned Magistrate Judge issued a Report and Recommendation recommending dismissal of Wall's federal habeas petition as time barred.[31]  Upon review of Wall's objections, the District Judge granted Wall equitable tolling and referred the matter back to the Magistrate Judge on November 8, 2004, for a determination on the merits.[32]

Upon the undersigns review of the procedural bar defense raised by the State, the Court determined that the State was in error.[33]  The applicability of the procedural bar doctrine is readily applied when the state court clearly and expressly rejects the claim by referencing a state procedural rule.  *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  In this case,  the state court dismissed his post-conviction claims on the merits.

This was the last reasoned decision on the issues raised.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

The Trial Court's ruling was clearly a decision on the merits and made no reference to any state procedural bars to the claims raised.  Thus, this Federal Court on habeas corpus review could not accept the State's unfounded procedural default defense made in connection with these four

---

[31]Rec. Doc. No. 12.

[32]Rec. Doc. No. 14.

[33]Rec. Doc. No. 15.

claims.  In accordance with this finding, the Court directed the State to address the four claims on the merits.[34]

The State filed the supplemental response alleging that claim numbers five and eight were without merit based on state law.[35]  The State failed to address any of the claims under federal law. The State also failed to respond to the merits of claim numbers nine and eleven as ordered by the Court.

Wall also filed a traverse to the State's supplemental opposition again arguing that he exhausted state court remedies and that none of the state courts imposed a procedural bar to review of his claims.[36]

## V.    Standards of Review on the Merits

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law and mixed questions of fact and law.  A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence"

---

[34]Rec. Doc. No. 15.

[35]Rec. Doc. No. 16.

[36]Rec. Doc. No. 17.

burden placed on a petitioner who attempts to overcome that presumption. Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

## VI.    Competence to Stand Trial (Claim No. 1)

Wall contends that the Trial Court erred in finding that he had the mental capacity to proceed to trial.  Wall argues that, under Louisiana law, the Trial Court erred by relying solely on the medical testimony to find him competent.

Wall's counsel raised this issue to the Louisiana First Circuit on direct appeal alleging that the Trial Court relied solely on the medical testimony and failed to consider whether Wall was able to assist his counsel and understand the charges and proceedings.  The Court found that the Trial Court had made its competency determination after defense counsel cross-examined the doctors on Wall's ability to understand the proceeding and assist his counsel.  The Court determined that the Trial Court did not abuse its discretion or ignore state law standards in determining that Wall was competent to proceed to trial.  This was the last reasoned decision on the issue since the Louisiana Supreme Court denied the subsequent Writ Application without reasons. *See Ylst*, 501 U.S. at 802.

There is no case law generated by either the Supreme Court or the United States Fifth Circuit which would require a federal habeas court to conduct a de novo review of the state court's determination of competency to proceed. *See Moody v. Johnson*, 139 F.3d at 481 (citing *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997) (habeas petitioner is entitled to federal evidentiary

12

hearing only by offering clear and convincing evidence of a threshold doubt of competency)). Furthermore, the question of competency to stand trial is a question of fact. *Patterson v. Cockrell*, 69 Fed. Appx. 658, 2003 WL 21355999 at *4 (5th Cir. 2003) (citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983)). Thus, under the AEDPA, the Trial Court's determinations of Wall's competency is presumed correct and this Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). Wall has not met his burden under § 2254(e)(1) of establishing that the Trial Court's findings were unreasonable for the following reasons.

Based on a review of the record and evidence presented at the competency hearing, the Trial Court's determination that Wall was competent was not an unreasonable determination of the facts. Each of the psychiatric experts who examined Wall prior to the hearing concluded that Wall was competent to stand trial and was capable of understanding the proceedings and aiding in his defense.[37] Dr. Richard P. Strobach testified that he felt Wall had suffered from marijuana abuse and possibly a brief psychiatric disorder.[38] Dr. Strobach stated that Wall's belief that he was being stalked, if proven true, would indicate a delusional disorder. The Doctor indicated, however, that he had nothing to substantiate the alleged delusion.[39] He indicated that Wall's sixth grade education limited his ability to understand legal terms but he was able to go over the facts of the situation and

---

[37]St. Rec. Vol. 5 of 7, Sanity Hearing Transcript, 3/5/97.

[38]*Id.*, at p.4.

[39]*Id*, at pp.4-5.

13

aid in his defense.[40]  He also confirmed, upon questioning by the Trial Court that Wall was not on

medication and did not require medication.[41]

Dr. James B. Denney also testified that Wall was competent and capable of assisting in his

defense.[42]  He testified similarly to Dr. Strobach and reached the same conclusions.[43]  After hearing

the testimony of both psychiatrists, the Trial Court found Wall competent to proceed.

A defendant is mentally competent when he has the "present ability to consult with his

lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual

understanding of the proceeding . . . against him." *Dusky v. United States*, 362 U.S. 402 (1960);

*Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998).  The Supreme Court also held in *Medina v.*

*California*, 505 U.S. 437 (1992) that a State may presume in its laws that the defendant is competent

to proceed and require the defendant to bear the burden of proving his incompetence by a

preponderance of the evidence.  *Id.* at 449; *Meredith v. Cain*, 2005 WL 1400453 at *7 (E.D. La.

2005).  Louisiana's law does just this; it presumes that a defendant is competent and the defendant

bears the burden of proving his incapacity to stand trial.  *State v. Hernandez*, 735 So.2d 888, 893

(La. App. 5 Cir. May 19, 1999); *State v. Lott*, 671 So. 2d 1182, 1186 (La. App. 2 Cir. 1996).

At the hearing held before the Trial Court, Wall did not overcome the presumption of

competence.  Both doctors testified that he understood the charges, he understood the gravity of the

proceedings, and he understood the need to assist his counsel.  The doctors resolved that, although

limited in education, he was capable of understanding and assisting his counsel with a defense.

---

[40]*Id.*, at p.5.

[41]*Id.*, at p.6.

[42]*Id.*, at p.6-7.

[43]*Id.*

14

These factors are all that are required for the Trial Court to have determined that he was competent. The Court's factual finding was not based on an unreasonable determination of the facts in light of the un-refuted testimony of the psychiatrists at the competency hearing.

For the foregoing reasons, Wall is not entitled to habeas corpus relief on this claim.

## VII.    Denied the Right to Present Victim Character Evidence (Claim No. 2)

Wall alleges that the Trial Court erred in refusing to allow character evidence of the victim or that the victim made an overt act or hostile demonstration towards him.  Wall alleges that this denied him the right to present the theory that he was justified in defending himself against the victim.

The record demonstrates that, during cross-examination of Chief Rimes at trial, defense counsel attempted to obtain testimony that Wall had previously lodged complaints to the Chief that the victim was harassing him and stalking him.[44]  The prosecutor objected on the basis that it was inadmissable character evidence with no foundation of an overt or hostile act at the time of the murder.[45]  After hearing argument from both sides, the Trial Court sustained the State's objection finding that, pursuant to State evidentiary rules and law, the defense was attempting to elicit testimony which would be inadmissable character evidence of the victim.[46]

Wall's counsel raised the issue again on direct appeal to the Louisiana First Circuit.  The Court denied relief on the claim finding that, as a matter of Louisiana law, character evidence of the victim was only admissible after the defendant laid a foundation that, at the time of the incident, the

---

[44]St. Rec. Vol. 4 of 7, Trial Transcript, p. 457-58, 9/18/97.

[45]*Id.*

[46]*Id.*, at p. 460-61.

15

victim made a hostile demonstration or committed an overt act against the accused, which would have led a reasonable person to believe that the accused was in immediate danger of losing his life or suffering great bodily harm.[47]  The Court determined that there was no evidence of a hostile demonstration or overt act at trial, even when considering Wall's account of the killing.[48]  This was the last reasoned decision on the issue.  *See Ylst*, 501 U.S. at 802.

Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).  The states are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee.  *Burgett v. State of Texas*, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (noting that habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)

In this case, Wall has not established any such due process violation.  Wall has not pointed to any Supreme Court precedent nor can this Court find any which would compel that the evidence have been admitted.

As indicated by the state trial and appellate courts, Wall did not present any evidence at trial that would have indicated that Lee was the aggressor or committed some act sufficient to have

---

[47]St. Rec. Vol. 1 of 7, 1st Cir. Opinion, p. 7, 99-KA-1047, 3/31/00.

[48]*Id.*, at p. 9.

warranted admission of the evidence at issue. Even in this petition, Wall only references his history of disagreements with Lee as it related to Lee's relationship with Wall's mother. He offers nothing about an overt act at the scene of the crime.

Wall has pointed to nothing in the transcripts which would indicate that he was entitled to introduce the victim character evidence his counsel sought to obtain from Chief Rimes. As noted by the Louisiana First Circuit, Wall gave the statement that Lee was asleep when he approached with the gun pointed. Lee allegedly jumped out of bed to question why Wall was standing over him with a gun. Wall's response was to repeatedly shoot Lee, even after Lee fell to the ground.

Without some indication that his trial was rendered unfair or that the trial judge's evidentiary ruling was "extreme error," Wall is not entitled to relief on this claim.

## VIII.   State Failed to Disclose Defendant's Statement (Claim No. 3)

Wall alleges that the State knowingly failed to disclose during discovery the statements that he made to Officer Jan Yarborough. Relying on state law, Wall alleges that the State violated Louisiana rules on criminal discovery and withheld the statement improperly. He claims this prevented him from preparing a defense to his alleged use of profanity in the statement to Yarborough.

This issue was raised by counsel on direct appeal to the Louisiana First Circuit. Counsel argued that the statement made to Officer Yarborough was not produced during discovery and Yarborough's testimony at the suppression hearing differed from her testimony at trial. For the first time at trial, Yarborough indicated that Wall told her "I don't have to look over my shoulder any longer, I just killed the mother fu__er." As Wall does here, counsel argued that the profanity used

in the statement may have led the jury to believe that Wall was angry and may have affected his defenses of insanity and justifiable homicide.

The Louisiana First Circuit denied relief on the discovery issue finding that there was no prejudice to Wall resulting from the State's failure to inform the defense of the alleged use of profanity. The Court held that Wall's anger was apparent from his other statements to Chief Rimes. In addition, the defense had the opportunity to cross-examine Yarborough and bring to the jury's attention that her testimony was the first reference to the profanity. For these reasons, the Court denied relief on the claim. This was the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 802.

The only error alleged here by Wall is that the State failed to comply with Louisiana's discovery rules. As a general principle, a federal court "may not sit as a 'super state Supreme Court' to review errors under state law  . . . ." *Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994) (citing *Whittington v. Estelle*, 704 F.2d 1418, 1422 (5th Cir. 1983)). The federal court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). As discussed above, a criminal proceeding is fundamentally unfair when the error fatally infects the trial or is of such a quality that it necessarily prevents a fair trial. *Lisenba*, 314 U.S. at 236-37. Wall has not met this burden.

Wall argues that the testimony of which he complains was inculpatory in nature which may have warranted preparation of a defense. He suggests that the jury may have believed that he was

angry because he called the victim a "mother f____r."  However, the State did not violate due process in failing to produce this inculpatory evidence.

The defense generally has the right to be provided evidence that is favorable to the defense and copies of any witness statements that relate the subject matter of the witness's statement.  The Supreme Court in *Brady* required the production of the exculpatory and impeachment evidence for reasons of due process and a violation thereof is reviewable on federal habeas review.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  However, the failure to produce witness testimony is not of constitutional magnitude.  *Martin v. Maggio*, 711 F.2d 1273, 1283 (5th Cir. 1983); *Calley v. Callaway*, 519 F.2d 184, 225-26 (5th Cir. 1975).

The *Brady* disclosure requirement applies only to exculpatory and impeachment evidence, not to inculpatory or neutral evidence.  *See United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir.1989); *see also Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994); *Andrews v. Collins*, 21 F.3d 612, 626 (5th Cir.1994).  "If the evidence is inculpatory, then *Brady* is not violated, regardless of the effect at trial of the nondisclosure."  *United States v. Gonzales*, 90 F.3d1363, 1369 (8th Cir. 1996). Thus, only evidence that is exculpatory and material to guilt or that is favorable impeachment evidence must be disclosed by the prosecution for due process reasons.  *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87.

In this case, Wall alternatively argues under a broad reading that Officer Yarborough's statement was arguably impeachment evidence because it allegedly differed from the prior disclosures and otherwise affected his ability to argue a defense.  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful

opportunity to present a complete defense." *Brazley v. Cain*, 35 Fed. Appx. 390, 2002 WL 760471 at *6 (5th Cir. Apr. 16, 2002) (*quoting United States v. Scheffer*, 523 U.S. 303, 329 n.16 (1998)). However, these violations will only occur where the defendant is denied the opportunity to cross-examine or is prevented from putting a witness on the stand or from introducing evidence. *Id.*

The prosecution's suppression of impeachment evidence is covered by the rules of *Brady*. Such a claim requires a showing that "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *United States v. Holley*, 23 F.3d 902, 914 (5th Cir. 1994) (*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985)).

> Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

Significant to this case is the proposition that claims pursuant to *Brady* involve "'the discovery of evidence <u>after trial</u> of information which had been known to the prosecution but unknown to the defense.'" (emphasis added) *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (*quoting United States v. Agurs*, 427 U.S. 97, 103 (1976)). This is not the case here.

Wall's counsel knew about the statement made to Officer Yarborough long before trial. It was also discussed at the motion to suppress Wall's confessions. Officer Yarborough also testified at trial and was fully cross-examined by defense counsel. "When information is fully available to

a defendant at the time of trial . . ., the defendant has no <u>Brady</u> claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980). *Brady* does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted). The statement was known and disclosed at the time of trial and defense counsel was able to use the Officer's statement in an effort to impeach her at trial regarding Wall's alleged use of profanity.

The record does not demonstrate that Wall was denied a fair trial due to the late disclosure of the profanity portion of his statement as recalled by Officer Yarborough at trial. Wall is not entitled to relief on this claim and the state courts' failure to grant relief was not contrary to or an unreasonable application of Supreme Court precedent.

## IX.    **Insufficient Evidence to Convict (Claim No. 4)**

Wall alleges that the evidence was insufficient to prove that he committed second degree murder. He bases this argument on the contention that he proved at trial by a preponderance of the evidence that he was insane at the time and therefore justified in shooting Lee.

Wall's counsel raised this claim on direct appeal to the Louisiana First Circuit. Relying on the rule set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court held that a reasonable jury could have found that Wall failed to rebut Louisiana's presumption of sanity. The Court also held that there was sufficient evidence under *Jackson* to support the verdict and the conclusion apparently reached by the jury that Wall did not act in self-defense to justify the murder. This was the last reasoned decision on the issue. *See Ylst*, 501 U.S. at 802.

The appropriate standard for determining the sufficiency of evidence at Wall's trial is that set forth in *Jackson v. Virginia*, which was relied upon by the state appellate court. The *Jackson*

standard requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

Claims of insufficient evidence present a mixed question of law and fact.  *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*.  *Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

In this instance, Wall's claim has two distinct facets.  The first aspect of his claim is that the evidence was insufficient to prove that he committed second degree murder.  This argument is based on his second suggestion which is that he proved by a preponderance of the evidence that he was insane.  The offense of second degree murder is defined by Louisiana law as "the killing of a human being . . . when the offender has a specific intent to kill or to inflict great bodily harm."  La. Rev. Stat. Ann. § 14:30.1(A)(1).  The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. Ann. § 14:10(1).  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989).

In this case, Wall does not argue that he did not shoot or kill Lee or that the State failed to prove that he did so.  His challenge here is strictly to the element of intent.  He suggests that, because he was insane, he did not have the intent, or understanding, of the consequences of his act.  To properly analyze his claim, this Court must apply *Jackson* in light of Louisiana's laws regarding

22

the affirmative defense of insanity to the facts in the case.  *See Jackson*, 443 U.S. at 324 (federal

habeas claims "must be gauged in the light of the applicable [state] law defining the element");

*Reese v. Wainwright*, 600 F.2d 1085, 1089-90 (1979) (applying the *Jackson* standard to determine

whether an insanity defense was proven).

Louisiana law applies a rebuttable presumption that a defendant is sane.  La. Rev. Stat. Ann.

§ 15:432.  A defendant can overcome the presumption with proof of insanity by a preponderance

of the evidence.  La. Code Crim. P. art. 652.  Proof of insanity is proof of the defendant's inability

to distinguish between right and wrong at the time of the offense.  La. Rev. Stat. Ann. § 14:14.

Thus, when applying the *Jackson* standard to the insanity defense under Louisiana law, the question

becomes whether any rational trier of fact, viewing the evidence in the light most favorable to the

prosecution, could conclude beyond a reasonable doubt that the defendant failed to prove by a

preponderance of the evidence that he was insane at the time of the offense.  *See Poree v. Cain*, 1999

WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (citing *State v. Silman*, 663 So.2d 27, 32 (La.

1995); *State v. Peters*, 643 So.2d 1222, 1225 (La. 1994); *State v. Nealy*, 450 So.2d 634, 637 (La.

1984); *State v. Price*, 403 So.2d 660, 662 (La. 1981); *State v. Roy*, 395 So.2d 664, 669 (La. 1981);

*State v. Claibon*, 395 So.2d 770, 772 (La. 1981)).

Wall called Dr. James Denney to the stand.  Dr. Denney was part of the sanity commission

that evaluated Wall for his competency to proceed to trial.  Dr. Denney did not evaluate him for his

state of mind at the time of the crime but instead only for competency to proceed to trial.[49]

---

[49]St. Rec. Vol. 4 of 7, Trial Transcript, p. 534.

Dr. Denney testified that he listened to the recording of Wall giving his confession statement at the time of his arrest.[50]  He stated that he found Wall to be "very direct, he seemed upset, he seemed very sorry that there had been a problem . . . The only thing he said that, basically, he feared for his life, and thought that when Jeffery [Lee] jumped up, that he had something in his hand, and he fired to - - to defend himself."[51]  The doctor concluded that, in his opinion, "he had a brief psychotic disorder at the time of the shooting."[52]  He continued that at the time of the shooting, Wall had "a combination of a post-traumatic disorder with either a brief psychotic disorder or a paranoid delusional disorder" or believed that his life was in danger.[53]  With this, Dr. Denney answered positively when asked by defense counsel whether this rendered Wall incapable of distinguishing between right and wrong.[54]

On cross-examination, Dr. Denney admitted to the prosecutor that at the time of his examination of Wall for the sanity commission, he did found that Wall had no significant psychiatric history and that he was not suffering from mental illness.[55]  The doctor also admitted that the passage of time, over 13 months, between the crime and his evaluation of Wall's records and statements made it difficult to analyze his state of mind at the time of the crime.[56]

---

[50]*Id.*, at p. 537-38.

[51]*Id.*, at p. 539.  The doctor also testified that he found support in Wall's statements to him "that he believed in his mind, that he was acting in self-defense."  *Id.*, at p. 544.  The Court sustained the State's objection to this statement as reaching a factual conclusion left for the jury and instructed the jury to ignore the statement.

[52]*Id.*, at p. 547.

[53]*Id.*, at p. 549.

[54]*Id.*, at p. 549-50.

[55]*Id.*, at p. 554-556.

[56]*Id.*, at p. 561-62.

In a further effort to challenge Dr. Denney's opinion, the State called Dr. Richard Strobach, who also sat with Dr. Denney on Wall's sanity commission.  Dr. Strobach testified that the psychiatric manual known as the DSM IV listed three criterion to meet the diagnosis for a psychotic disorder.[57]   The first required the presence of one of the following symptoms: delusions; hallucinations; disorganized speech; grossly disorganized; or a catatonic behavior.  The second category was that the "duration of an episode of the disturbance at least one day, but less than one month, with eventual full return to pre-morbid level of function."  The third criteria was that the disturbance was not better accounted for by a mood disorder with psychotic features, schizo or affective disorder, or schizophrenia that is not due to the direct psychological effects of a substance or medication.

In his opinion, Dr. Strobach determined that Wall may have "possibly [had] a delusion," but that the disturbance was less than one day - possibly only minutes.[58]  He also resolved that the third criteria did not apply at all to Wall.[59]  Dr. Strobach opined that Wall's behavior immediately after the shooting was not indicative of a person suffering from a psychotic episode.[60]  He also denied finding that Wall suffered from the symptoms of post-traumatic stress disorder or that he suffered

---

[57]*Id.*, at p. 588-89.

[58]*Id.*, at p. 589-90.

[59]*Id.*, at p. 591.

[60]*Id.*, at p. 590, 592-93.

from a brief reactive psychosis at the time of the killing.[61]  The doctor testified that he saw no evidence of paranoia in Wall and instead his symptoms were more in line with progressive anger.[62]

He also noted that Wall admitted to him, but not to Dr. Denney, that he frequently used marijuana.  Dr. Strobach, however, testified that this did not constitute a mental disorder or defect which rendered Wall incapable of distinguishing between right and wrong.[63]  The doctor also considered the fact that Wall turned himself in to the police after the shooting which established that he knew he did something wrong.[64]

The evidence before the jury was that of the testimony of Dr. Denney and Dr. Strobach. Through the questioning of the prosecutor, Dr. Strobach raised doubts in the conclusions reached by Dr. Denney regarding Wall's state of mind.  The presumption under Louisiana law is that Wall was sane.  The jury apparently chose not to accept the conclusions of Dr. Denney and instead gave weight to the testimony of Dr. Strobach which clearly favored the presumption.  Having determined that Wall was not paranoid or mentally ill at the time, his theory that he acted in self-defense also failed.

Thus, in light of the testimony, a reasonable jury could have concluded that the presumption of sanity stood and that Wall did not prove by a preponderance of the evidence that he was suffering from a mental disorder or disease that affected his ability to know right from wrong at the time of the shooting.

---

[61]*Id*., at p. 594.

[62]*Id*., at p. 596-598.

[63]*Id*., at p. 597.

[64]*Id*., at p. 599-600.

26

The State therefore successfully established the element of intent and met its burden of proof in establishing that Wall committed second degree murder. The evidence was sufficient for a reasonable jury to conclude that Wall intentionally shot and killed Lee.

The state courts' denial of relief on this claim was, therefore, not contrary to or an unreasonable application of Supreme Court precedent.

## X.   Prosecutor's Wrongful Instruction on Legal Presumption of Insanity (Claim No. 5)

Wall alleges that the prosecutor erred when he instructed the jury on the legal presumption attributable to a drug induced psychosis. Wall alleges that the prosecutor instructed the jury contrary to the law, which a drug induced psychosis could not be used to establish that he did not know right from wrong. His counsel did not object to the alleged statement by the prosecutor.

Wall, nevertheless, raised this claim in his application for post conviction relief to the Trial Court. That court summarily dismissed the claim as meritless as a matter of law. Wall's subsequent writ applications to the Louisiana First Circuit and the Louisiana Supreme Court were simply denied. The Trial Court's ruling is therefore the last reasoned decision on this issue. *See Ylst*, 501 U.S. at 802.

An improper comment to a jury is not grounds for federal habeas relief unless it "so infected the trial with fundamental unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristophero*, 416 U.S. 637, 643 (1974); *Ortega v. McCotter*, 808 F.2d 406, 407 (5th Cir. 1987). Claims of prosecutorial misconduct about which trial counsel did not object during trial must be evaluated under plain error analysis to determine if the alleged violations "seriously affected the fairness, integrity, or public reputation of judicial proceeding and resulted in a miscarriage of justice." *United States v. Goff*, 847 F.2d 149, 162 (5th Cir. 1988), *cert. denied*, 488 U.S. 932 (1988)

(citing *United States v. Livingston*, 816 F.2d 184, 195 (5th Cir. 1987)).  Relief may be granted only

when "the misconduct [was] persistent and pronounced . . . or the evidence of guilt was so

insubstantial that but for the improper remarks the conviction or sentence would not have resulted."

*Turner v. Johnson*, 106 F.3d 1178, 1188 (5th Cir. 1997).

In this case, Wall has failed to establish any error by the prosecutor.  The Court is compelled

to note that Wall's entire argument is based on the fact that he misquoted from the transcript and

otherwise took the prosecutor's statement out of context.  The prosecutor at no time advised the jury

of any such legal presumption.  The actual quote by the prosecutor is nothing more than a

summation of the opinion testimony by Dr. Strobach, who testified with regard as to whether Wall

was in a delusional state sufficient to constitute one part of the test for establishing a psychotic

disorder:[65]

> And you have to be able to rule out that the dillusions [sic] were caused from organic brain disorder, bi-polar disorders, and most importantly drugs.
> But in this case, because the defendant had admitted to Dr. Denney, that he daily smoked marijuana, - - I'm sorry, he admitted to Dr. Strobach that he daily smoked marijuana, you cannot rule out that any dillusion [sic] that he may have had was caused from the drugs.
> And then, you heard, if he was suffering from a dillusion [sic], that were caused by the drugs, that is not a mental disease or defect, under Louisiana law, which would render one incapable of distinguishing right from wrong.

The representations made by the prosecutor in his closing argument were supported by the

testimony of Dr. Strobach.[66]  Following this statement, the prosecutor immediately told the jury not

---

[65]St. Rec. Vol. 5 of 7, Trial Transcript, p. 620.

[66]*Id*., at p. 597; *see also*, *Id*., at p. 588-96.

28

to focus on the details of the insanity defense.  Instead, he encouraged the jury to focus on the fact that Wall told the psychiatrists that he knew right from wrong:[67]

> I could go into more detail about the insanity defense, but, I want you to consider this point and it's probably the strongest point.
> The defendant himself, has told Doctor Strobach and he has told his own expert, on numerous occasions, that he knew the difference between right and wrong at the time of the incident.  And I don't care what anybody comes before you and says, if the defendant is going to admit that he knew the difference between right and wrong at the time of the accident, I don't think you ought to let an expert come in here and convince you otherwise.

The argument and summation by the prosecutor was supported by the testimony heard by the jury.  It was not of the type that seriously affected the fairness or integrity of the proceeding nor has Wall established that it resulted in a miscarriage of justice.  His claim is factually inaccurate and otherwise does not demonstrate a constitutional violation.

For all of the foregoing reasons, Wall has failed to establish that the state court's denial of relief on this claim was contrary to or an unreasonable application of federal law.  He is not entitled to relief on this claim.

## XI.   Trial Court's Erroneous Instructions to the Jury (Claim Nos. 7, 8)

Wall contends that the Trial Court gave an erroneous instruction on "specific intent" by placing the burden shifting presumption before the jury in violation of the principles established by the Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510 (1979).  Specifically, he argues that the Court instructed the jury that they must presume that he intended the consequences of his acts which heightened his burden of proving insanity.  He also argues that the Trial Court erred by failing to instruct the jury that reasonable doubt may also be established by a "lack of evidence."

---

[67]*Id.*, at p. 620.

These issues were raised by Wall in his post conviction application.  They were, however, denied as meritless by the Trial Court.  *See Ylst*, 501 U.S. at 802.

In order to determine whether the language of a jury charge amounts to a constitutional error, the Court must determine whether the instructions, when read as a whole, relieved the State of its burden to prove each element of the crime beyond a reasonable doubt in violation of the principles set forth in *In re Winship*, 397 U.S. 358 (1970).  *See Francis v. Franklin*, 471 U.S. 307 (1985).  In doing so, the Court must consider whether the specific language involved creates a constitutionally objectionable "mandatory presumption," or "merely a permissive inference," on an essential element of the crime.  *Franklin*, 471 U.S. at 314.

If the charge amounts to error, the Supreme Court has held that the error is subject to a harmless error analysis. *California v. Roy*, 519 U.S. 2 (1996).  The Court held that the appropriate standard to be used in addressing jury charges on the elements of a crime was the standard applicable to trial errors, and not structural errors, as recognized by *Kotteakos v. United States*, 328 U.S. 750 (1946) and as set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *Roy*, 519 U.S. at 6 (*also citing O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).  Therefore, as the Supreme Court concluded, *Brecht* articulates the appropriate standard for determining whether a trial error was harmless in a federal habeas challenge to the use of a jury charge.

In *Brecht*, the Supreme Court held that a federal habeas court may not grant relief on trial errors unless the petitioner demonstrates that there is a reasonable likelihood that the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637-38; *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991).  Upon application, when a federal judge in a habeas proceeding is in grave doubt about whether trial error of federal constitutional law had

substantial and injurious effect or influence in determining jury's verdict, that error is not harmless, and petitioner must prevail. *O'Neal*, 513 U.S. at 436.  Therefore, this Court on habeas review is required to first determine whether use of the charge amounted to constitutional error, and if so, whether the error was harmless.

### A.   <u>Specific Intent</u>

In *Sandstrom*, relied upon by Wall, the United States Supreme Court held that a trial judge's instruction to a jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" was unconstitutional because it improperly shifted the burden and misled the jury regarding its duties.  *Sandstrom*, 442 U.S. at 523.  The Supreme Court later held that "[t]he Due Process Clause of the Fourteenth Amendment . . . prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime."  *Francis v. Franklin*, 471 U.S. 307, 313 (1985) (citations omitted).  In *Coleman v. Butler*, 816 F.2d 1046, 1048 (5th Cir. 1987), the Fifth Circuit held as follows:

> [a] mandatory presumption, one that instructs a criminal jury that it must infer the presumed fact if the state proves the predicate fact or facts, is unconstitutional.  A permissive inference suggests to the jury that it may, but need not, draw an inference if the state proves the predicate fact or facts.  A permissive inference is unconstitutional only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts.

In the instant case, however, Wall has failed to establish that the Trial Court used an improper charge.  Wall argues that the Trial Court in his case gave the exact same charge as that challenged in *Sandstrom*:  "You may infer that the defendant intended the natural and probable consequences of his acts."  Rec. Doc. No. 1, Brief in Support of Petition, p. 37.  Wall suggests that this quote can be found on page 664 of the trial transcript.  *Id.*

31

However, there is no such statement on page 664 of the transcript.  A thorough reading of the entire transcript reflects that the Trial Court gave no such instruction in Wall's case.  Again, his claim is factually baseless and based on a misreading or misrepresentation of the transcript.

In this case, the instruction given was that specific intent existed when "the defendant actively desired the proscribed criminal consequences to follow his act or his failure to act."[68]  With respect to general criminal intent, the Court instructed that it was "present when the circumstances indicated that the defendant must have adverted to the proscribed criminal consequences as reasonably certain to result from his act or his failure to act."[69]

Neither instruction remotely touched upon the prohibited presumption Wall alleges.  Thus, Wall's argument in this regard is without merit.  The state courts' failure to grant relief on this claim was not contrary to or an unreasonable application of Supreme Court law.

B.    **"Lack of Evidence" Charge**

Wall also suggests that the Trial Court failed to instruct the jury that their reasonable doubt findings should also include "the lack of evidence."  He argues that this was in clear violation of Louisiana law under La. Code Crim. P. art. 804(A)(2) which obligates the jury to consider the evidence and the lack of evidence when applying the reasonable doubt standard.

As discussed before, the state court's failure to comply with state law is not reviewable by this Court on federal habeas review.  *See Hogue*, 874 F. Supp. at 1533; *Neyland*, 785 F.2d at 1293. That restriction aside, the Court must point out that Wall's claim is again based on factual error.

---

[68]St. Rec. Vol. 5 of 7, Trial Transcript, p. 664.

[69]*Id.*

A reading of the transcript reflects that the Trial Court did in fact give the charge Wall claims was omitted:[70]

> The burden is on the State to prove the defendant's guilt beyond a reasonable doubt, and considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence.

Wall's claim is once again based on factual error and is meritless. The jury was in fact instructed that reasonable doubt could be drawn from the lack of evidence on a particular point.

Therefore, the state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court law.

## XII.    Discrimination in the Grand Jury Selection Process (Claim Nos. 9 and 11)

Wall next argues that the Grand Jury which issued the indictment against him was unconstitutionally impaneled because of discrimination against blacks and other minorities in the selection of grand jury forepersons. The record reflects that Wall is Caucasian.[71] He argues further that, as a result, the indictment was invalid and the Trial Court lacked jurisdiction over his criminal proceedings. Wall contends that, because of these structural errors, his conviction was unconstitutional. Wall raised this claim in his post conviction application which was denied as meritless by the Trial Court. *See Ylst*, 501 U.S. at 802.

In support of these claims, Wall argues that Louisiana Code of Criminal Procedure article 413(B), as to the version in effect when he was indicted, violated his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution, his right to an impartial jury under the Sixth Amendment to the United States Constitution and his rights under the

---

[70]St. Rec. Vol. 5 of 7, Trial Transcript, p. 664.

[71]St. Rec. Vol. 1 of 7, Arrest Report, 7/26/96 ("Race: W")

Louisiana Constitution.  Wall makes three arguments in support of this contention:  (1) Article 413(B) violated the Louisiana Constitution and deprived him of due process because it discriminated against blacks over a prolonged period of time; (2) the method of selecting the grand jury foreperson was susceptible of discrimination because the foreperson of his grand jury was selected by the trial judge;  and  (3)  the  indictment  failed  to  charge  an  offense  because  the  grand  jury  was unconstitutionally impaneled and therefore the trial court lacked subject matter jurisdiction to prosecute him.

As to petitioner's first argument that Article 413(B) violated the Louisiana Constitution, again, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  *Wilkerson*, 16 F.3d at 67.  This Court's analysis must focus on Due Process considerations which requires that the court grant habeas relief only when the errors of the state court make the underlying proceeding fundamentally unfair.  *Neyland*, 785 F.2d at 1293. Thus, the court will consider Wall's claims of violation of equal protection and due process under the United States Constitution and federal law.

At the time of Wall's indictment in Tangipahoa Parish in 1996, Article 413(B) provided as follows:

> In parishes other than Orleans, the court shall select one person from the grand jury venire to serve as foreman of the grand jury.  The sheriff shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury.

La. Code Crim. Proc. art. 413(B) (emphasis added) (prior to amendment by Acts 1999, No. 984, § 1, approved July 9, 1999).  Louisiana's process at that time was later described by the Supreme Court as follows:

the judge selects the foreperson from the grand jury venire before the remaining members of the grand jury have been chosen by lot. . . . . As a result, when the Louisiana judge selected the foreperson, he also selected one member of the grand jury outside of the drawing system used to compose the balance of that body. These considerations require us to treat the case as one alleging discriminatory selection of grand jurors.

*Campbell v. Louisiana*, 523 U.S. 392, 396 (1998).

The Louisiana legislature amended Article 413(B) in July of 1999 to delete the following phrase: "the court shall select one person from the grand jury venire to serve as foreman of the grand jury." The legislature included other language which provided instead for random selection of the foreperson from among the already impaneled grand jury members. *See* La. Code Crim. Proc. art. 413(B) (as amended by Acts 1999, No. 984, § 1).[72]

The amendment was enacted in response to the *Campbell* case cited above. In *Campbell*, which was decided in April of 1998, the Supreme Court held that a white criminal defendant, like Wall, has third-party standing to raise due process and equal protection challenges to the systematic exclusion of African-Americans from his grand jury and, specifically, to the portion of La. Code Crim. P. art. 413(B) which was later repealed. *Peterson v. Cain*, 302 F.3d 508, 510 (5th Cir. 2002).

"[T]o be entitled to habeas relief [in a case alleging unconstitutional grand jury selection,] a claimant is required to prove discrimination under the standards set out in the Supreme Court's cases." *Rideau v. Whitley*, 237 F.3d 472, 484-85 (5th Cir. 2000) (emphasis added) (citing *Rose v. Mitchell*, 443 U.S. 545, 565 (1979)). The Supreme Court in *Campbell* emphasized that the criminal defendant must show, as a precondition to raising a third-party due process or equal protection

---

[72]The 1999 amendment applied to all parishes other than Orleans Parish. The article was amended again in 2001 to delete the exceptions for Orleans Parish. Acts 2001, No. 281, § 1.

challenge, that he suffered an "injury in fact" from the exclusion of African-Americans from the grand jury.  The Court explained as follows:

> Regardless of his or her skin color, the accused suffers a significant injury in fact when the composition of the grand jury is tainted by racial discrimination. Discrimination on the basis of race in the selection of members of a grand jury . . . strikes at the fundamental values of our judicial system because the grand jury is a central component of the criminal justice process.

*Campbell*, 523 U.S. at 398 (quotation omitted).  Furthermore, "[t]o assert the rights of those venirepersons who were excluded from serving on the grand jury in his case, [the petitioner] must prove their exclusion was on account of intentional discrimination."  *Id.*

In the instant case, Wall cannot and has not established any race or gender discrimination in the selection of the foreperson of his grand jury.  In fact, the state court record shows that the grand juror of his case was a female.

Wall also now presents to this federal court certain documents which were not presented to the state courts in connection with his post conviction review.  This Court can nevertheless consider the evidence on habeas review.  It does not considerably alter his claim, nor would it alter the state court's finding that the claims are without merit.  *See Morris v. Dretke*, 413 F.3d 484 (5th Cir. 2005).

Wall presents to this Court copies of alleged grand jury documentation concerning Tangipahoa Parish.[73]  However, the records submitted are not certified or verified in any way.  Wall

---

[73]Rec. Doc. No. 10 (Attachments), 11.

also has not disclosed from where he obtained the records or more importantly by whom they were prepared.[74]

Even assuming that the documents that Wall submitted to this court were authentic and admissible, his statistics are incomplete.  The records purportedly prepared for the signature of the Tangipahoa Parish official's signature contain no indication of the race or sex of any of the listed forepersons.[75]

Without some showing of intentional race or gender discrimination in the selection of his grand jury foreperson, who was a woman, Wall has not suffered an injury in fact and has not stated a constitutional violation.  *Guillory v. Cain*, 303 F.3d 647, 653 (5th Cir. 2001).  Wall has not shown any discrimination or that his grand jury was unconstitutionally impaneled.  He therefore would not be able to establish that the Trial Court was deprived of subject matter jurisdiction over his criminal case.

Accordingly, petitioner's claim that the grand jury was constitutionally defective lacks merit.  The state courts' denial of relief on these claims was not contrary to or an unreasonable application of Supreme Court law.

## XIII.   Ineffective Assistance of Counsel (Claim Nos. 6, 7, and 10)

Wall contends that his counsel was ineffective for failure to request, and the trial court erred by failing to give, a limiting instruction on the state's impeachment of a witness, Doris Wall Brown, by use of her prior conviction.  He also argues that counsel was ineffective for failure to move to

---

[74]The records appear to have been prepared as exhibits for another inmate.  One page has a footnote reference to a murder charge against "Cleopha Frederick" and another demographic chart bears the notation "State ex rel Frederick v Cain."

[75]Rec. Doc. No. 10, Attachment.  The other chart prepared for the Frederick case and marked "Exhibit B" contains reference to gender and race but does not indicate from where the information was obtained.  It also shows that between 1970 and 1991, there were 14 female and one black forepersons.

quash the allegedly defective indictment, addressed in Claim Nos. 11 above.  He further argues that counsel erred in failing to object to the "inference" portion in the specific intent charge, addressed in Claim No. 7 above.

Wall raised these claims in his post conviction application.  However, they were denied as meritless by the Trial Court.  *See Ylst*, 501 U.S. at 802.

The standard for evaluating counsel's performance is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, Wall "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of

reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994).  In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id*.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Kimler*, 167 F.3d at 893.  On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  *Motley*, 18 F.3d at 1226 (quoting Strickland,

466 U.S. at 693).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact.  *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must determine whether the state court's failure to grant relief to Wall was contrary to or an unreasonable application of *Strickland*.

### A.    Failure to Object to Specific Intent Charge

As an initial matter, the Court must find that there is no merit to Wall's contentions that counsel was ineffective for failure to object to the "inference" portion in the specific intent charge, addressed in Claim No. 7 above.  As discussed in detail in this opinion, Wall has not established that the Trial Court gave an unconstitutional specific intent charge.  Counsel's failure to raise an error where no error existed was not deficient performance.  *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).  Wall's claim is without merit.

### B.    Failure to file Motion to Quash

Wall also alleges that counsel was deficient for failure to move to quash the allegedly defective indictment addressed in Claim No. 11 above.  As resolved previously, Wall has not established that his indictment was unconstitutionally defective.  Thus, no motion was necessary.

Nevertheless, under Louisiana law, a motion to quash a grand jury indictment may be filed if, among other things, "the manner of selection of . . . the grand jury venire, or the grand jury was

illegal." La. Code Crim. P. art. 533.[76]  However, federal courts have long recognized that the filing

of a motion to quash of this type is generally a matter of professional judgment left to the discretion

of counsel.  *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965) (citing *Michel v. Louisiana*, 350

U.S. 91 (1955)); *accord United States v. Lewis*, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986).

In *Michel*, the Supreme Court held that the failure of counsel to move to quash the indictment

on grounds that the grand jury was unconstitutionally impaneled because of the historical exclusion

of African-Americans from the grand jury, including such exclusions in the consolidated cases

before the Court, was not deficient performance per se and was within the range of sound trial

strategy, given the facts of the case.  *Michel*, 350 U.S. at 100.

In the instant case, the decision of Wall's counsel not to challenge systematic discrimination

against African-Americans in the grand jury foreperson selection process was not outside the

reasonable discretion afforded counsel.  Wall has failed to establish that counsel's performance was

constitutionally deficient in this regard.  Wall's claim is without merit.

### C.    Failure to Request a Limiting Instruction

Wall alleges that his counsel erred in requesting a limiting instruction on the effects of

impeachment testimony regarding his mother, Doris Wall Brown.  He also suggests that the Trial

Court also erred for failing to give one sua sponte.

---

[76]La. Code Crim. P. art. 533 provides:
A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
(1)    The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
(2)    An individual grand juror was not qualified under Article 401.
(3)    A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.
(4)    Less than nine grand jurors were present when the indictment was found.
(5)    The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

The record shows that Brown testified for the prosecution.  She testified that Lee went to her home with her permission and her key to do laundry.[77]  She also testified that she had not seen her son, the petitioner herein, for about one week prior to the murder.[78]  On cross-examination, she stated that Lee knew her son often went to her house to eat lunch.[79]  She also stated that Lee was only suppose to be in her home for about 30 minutes and was to be gone to an appointment by 9:00 a.m.[80]  She repeatedly stated that she did not give him permission to stay longer and would not have given him the key if he had told her that he would be staying longer.[81]  She also testified that she knew he carried a billy-club, mace, and cigarettes, but would not have given him permission to bring those things into her home.[82]

On re-direct, the prosecutor questioned Brown about her concern that Lee carried these items.[83]  He also asked if she had a prior conviction.[84]  She answered affirmatively that she had been convicted of murder in Mississippi and given a life sentence.[85]

Wall contends that the prior conviction was used as impeachment evidence.  As such, he argues that his counsel, or the Trial Court, should have assured that the jury was given an instruction

---

[77]St. Rec. Vol. 3 of 7, Trial Transcript, p. 175.

[78]*Id.*, at p. 176.

[79]*Id.*, at p. 192, 193, 199.

[80]*Id.*, at p. 196.

[81]*Id.*, at p. 196-199.

[82]*Id.*

[83]*Id.*, at p. 205-06.

[84]*Id.*, at p. 207.

[85]*Id.*

on the limited use of the impeachment evidence.  Wall again basis his claim on state procedural law which this Court does not sit to enforce.  *Hogue*, 874 F. Supp. at 1533; *Neyland*, 785 F.2d at 1293.

Under federal standards, the Supreme Court has held that a witness's credibility can be attacked by revealing his possible biases, prejudices, or ulterior motives and further declared that the exposure of testimonial motivation is "a proper and important function of the constitutionally protected right of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  As noted by Wall, Louisiana law also allows the admission of extrinsic evidence to contradict the witnesses' testimony when it goes to the credibility of the witness.  La. Code Ev. art. 607.

In this case, Brown testified that Lee had overstayed his welcome in her house and was known to carry a billy-club and mace.  She also testified that she wanted to keep her son out of jail.  Thereafter, the State appropriately questioned Brown about her prior conviction in an apparent effort to challenge her credibility or motivation for testifying disfavorably about the victim.  In its instructions to the jury, the Trial Court gave the following directive:

> [t]he testimony of a witness may be discredited by showing that the witness will benefit in some way by the defendant's conviction or acquittal, that the witness is prejudiced or that the witness has any other reason or motive for not telling the truth.

The Trial Court's instruction defined what it takes to discredit, or impeach, a witness.  The fact that the jury may have questioned Brown's motives for testifying was well within their powers.

This court can find no law which would require the state court judge to give any other more limiting instruction with regard to the impeachment of a witness (not a defendant) by use of a prior conviction.  The Court was therefore not required to sua sponte enter any such instruction.[86]  Wall's

---

[86]The law cited by Wall which would impose such a duty on a Louisiana trial court relates solely to impeachment of an accused by use of prior convictions, so as to avoid jury confusion between impeachment and guilt.

counsel also was therefore not deficient in his performance for failing to request an instruction that was not warranted. *Green*. Wall's claim is without merit.

For the foregoing reasons, the state courts' denial of relief on Wall's claims of ineffective assistance of counsel was not contrary to or an unreasonable application of *Strickland* or any other Supreme Court precedent. Wall is not entitled to relief on these claims.

**XIV.** __Recommendation__

It is therefore **RECOMMENDED** that Charles Carlton Wall's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____28th_____ day of _____August_____, 2006.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

44