UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES CARLTON WALL                    CIVIL ACTION

VERSUS                                  NO: 03-1641

BURL CAIN, WARDEN                       SECTION: R(4)

**ORDER AND REASONS**

This matter was referred to the United States Magistrate
Judge for the purpose of submitting proposed findings of fact and
recommendations.  Before the Court are Wall's objections to the
magistrate judge's report and recommendation.  Having reviewed *de
novo* the petition, the record, the applicable law, the report and
recommendation of the United States Magistrate Judge, and the
petitioner's objections to the report and recommendation, the
Court finds that the petition should be DISMISSED with prejudice.

I.    **BACKGROUND**

    **A.  Factual Background**

    Petitioner Charles Carlton Wall is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.  On September 26, 1996, Wall was indicted by a grand jury in Tangipahoa Parish for second degree murder in the shooting death of Jeffrey Lee, a man who had been living in Wall's mother's home.

    The record shows that on July 26, 1996, the victim, Jeffrey Lee, was employed by Wall's mother, Doris Louise Brown Wall. That morning, Lee asked Mrs. Wall for permission to use the clothes dryer in her house in Kentwood, Louisiana.  Mrs. Wall gave Lee her keys.

    According to the taped statement given by Wall to the police immediately after the shooting, he went that day to his mother's home carrying an assault rifle under his shirt.  He purchased the weapon the night before for $40 from a man in a barroom.  Wall saw Lee's car parked in the yard before he entered the house. After entering the house, he unfolded the strap on the rifle and began searching the house.  When he came upon Lee, who was sleeping, Lee jumped up and asked what Wall was doing there. Wall then shot Lee, not knowing whether Lee had a gun.  Wall also stated to police that he would have shot Lee anyway because of what Lee had done the night before.

Wall told police that, about three months earlier, Lee told a young boy to see Wall if he wanted to buy drugs.  Wall warned Lee not to send people to him to buy drugs.  Wall also threatened to kill Lee in front of one of Lee's co-workers.  Wall had a pistol and waited for the co-worker to get off work so that he could confront Lee alone.  After waiting for a while and becoming more angry, Wall decided to leave.

After Wall gave his statement to the police, the police discovered the assault rifle and Lee's body inside of the Wall home.  Lee was unarmed and had been shot seven times.

### B.  Procedural History

At his prosecution for murder, Wall entered a plea of not guilty and later changed that plea to not guilty by reason of insanity.  He nevertheless was found competent to proceed at trial and was found guilty as charged after trial by jury on September 16, 17, and 18, 1997.  At a hearing held on October 17, 1997, the trial court denied Wall's Motion for New Trial and sentenced him to life imprisonment.

Wall's conviction became final five days later on October 22, 1997, because he did not seek timely reconsideration of his sentence or file a timely appeal from the conviction.  On December 9, 1998, Wall filed a petition for post-conviction

relief or for an out of time appeal, claiming that his attorney abandoned his appeal, which effectively denied him his right to appeal.  The trial court granted the request for an out of time appeal on December 14, 1998.  State R., Vol. 1 of 7, Trial Ct. Order, 12/14/98.

On appeal to the Louisiana First Circuit Court of Appeal, Wall raised five assignments of error: (1) the trial court erred in finding that he had the capacity to proceed to trial; (2) the trial court erred in preventing him from introducing evidence of the victim's character; (3) and (5) the trial court erred in denying his motions for mistrial and new trial based on the state's failure to provide the substance of the statement he made to Jan Yarborough; and (4) there was insufficient evidence to support his conviction.  State R., Vol. 1 of 7, 1st Cir. Op., 99-KA-1047, 3/31/00.  On March 31, 2000, the Louisiana First Circuit affirmed Wall's conviction after determining that his assertions were without merit.  *Id.*  On November 27, 2000, the Louisiana Supreme Court denied Wall's writ application without reasons. State R., Vol. 1 of 7, La. S. Ct. Order, 2000-K-1203, 11/27/00.

On July 30, 2001, Wall filed another petition for post-conviction relief, raising seven grounds for relief:

1.   he was denied the right to a fair trial when the prosecutor wrongfully instructed the jury on the legal

4

presumption of insanity regarding a drug-induced
psychosis;

2. he was denied the right to effective assistance of
counsel when his counsel failed to request a limiting
instruction on the state's impeachment of its own
witness, Doris Wall Brown, and he was denied the right
to a fair trial when Judge Bennett failed to *sua sponte*
give a limiting instruction regarding impeachment;

3. the trial court erred in instructing the jury on
"specific intent" placing a mandatory presumption
before the jury in violation of due process of law;

4. the trial court erroneously instructed the jury on
reasonable doubt in violation of state law and the due
process clause;

5. discriminatory practice in the grand jury foreperson
selection process in violation of equal protection and
the improper method of selecting the grand jury
forepersons violated his right to a fair cross-section
in the panel as well as equal protection;

6. counsel was ineffective when he failed to file pretrial
motions to quash the grand jury indictment based upon
the discriminatory practices in the selection process;

7. the unconstitutionality of the grand jury's composition

divested the court of jurisdiction over the case. State R. Volume 7 of 7, Pet. for Post Conviction Relief, 7/30/01.

On August 8, 2001, the trial court denied the petition, finding as a matter of law that there was no merit to the claims. State R. Vol. 7 of 7, J. on Application for Post Conviction Relief, 8/8/01.

On August 31, 2001, Wall filed a writ application with the Louisiana First Circuit, seeking review of the same claims.  On March 8, 2002, the court of appeals denied the application on the showing made.  State R. Vol. 1 of 7, 1st Cir. Order, 2001-KW-2101, 3/8/02.  Wall's writ application to the Louisiana Supreme Court was denied without reasons on April 21, 2003.  State R. Vol. 1 of 7, La. S. Ct. Order, 2002-KH-1249, 4/21/03.

On May 30, 2002, Wall filed a motion for a subpoena duces tecum in the trial court, seeking copies of certain documents relating to the selection of juries and grand juries in Tangipahoa Parish.  State R. Vol. 7 of 7, Mot. and Order for Subpoena Duces Tecum, 5/30/02.  The trial court denied the motion on June 6, 2002, noting that Wall's appellate and post-conviction delays had expired and that no civil action had been filed under the Louisiana Public Records Act.  State R. Vol. 7 of 7, Trial Ct. Order, 6/6/02.

On July 3, 2002, Wall filed a writ application in the

Louisiana First Circuit.  The Louisiana First Circuit denied the application on October 18, 2002, for failure to demonstrate a particularized need for the documents, for lack of a pending application for post-conviction review and no time left to file one, and for failure to qualify for relief under the Louisiana Public Records Act.  State R. Vol. 1 of 7, 1st Cir. Order, 2002-KW-1448, 10/18/02.

On December 11, 2002, Wall filed a writ application in the Louisiana Supreme Court seeking review of that order.  State R. Vol. 1 of 7, La. S. Ct. Letter, 2002-KH-3013, 12/11/03.  The Court denied the application on October 17, 2003, for failure to state a particularized need for the documents, citing *State ex rel. Bernard v. Cr.D.C.*, 653 So. 2d 1174, 1175 (La. 1995).  *State ex rel. Wall v. State*, 855 So. 2d 753 (La. 2003).

Wall filed his federal habeas petition on June 6, 2003. Wall asserts eleven claims: (1) that the Trial Court erred in determining that Wall was competent to stand trial; (2) that the Trial Court denied Wall the right to present a defense when it wrongfully determined that his statements to the police did not constitute evidence of an overt act; (3) that the State violated the Louisiana Code of Criminal Procedure by failing to inform the defendant of the substance of his oral statements which the State intended to use at trial; (4) that there was insufficient

evidence to support his conviction based on evidence of insanity;
(5) that he was denied a fair trial because the prosecutor
wrongly instructed the jury on the legal presumption of insanity
regarding drug induced psychosis; (6) that he received
ineffective assistance of counsel for failure to object or seek
limiting instruction when the State used a prior conviction as
impeachment evidence against a witness; (7) that the Trial Court
erred in its instruction on specific intent; (8) that the Trial
Court erred in its instruction on reasonable doubt because it did
not instruct the jury to draw inferences from "the lack of
evidence;" (9) that there was discrimination in the grand jury
selection process; (10) that he received ineffective assistance
of counsel for failure to file motion to quash the indictment
based on grand jury discrimination; and (11) that the Trial Court
lacked jurisdiction because of the grand jury discrimination
which rendered the indictment invalid.

    In its opposition, the state argued that claim numbers five,
eight, nine, and eleven were procedurally barred from review and
that the remaining claims were without merit.  (R. Doc. 5).

    On April 14, 2004, the United States Magistrate Judge issued
a report and recommendation recommending dismissal of Wall's
*habeas* petition as time barred.  (R. Doc. 12).  Upon review of
Wall's objections, this Court granted Wall equitable tolling and,

on November 8, 2004, referred the matter back to the Magistrate Judge for a determination on the merits.  (R. Doc. 14).

Upon review of the state's submissions, the Magistrate Judge determined that the asserted procedural bar to claims five, eight, nine, and eleven did not apply because the trial court dismissed them on the merits on post-conviction review.

On August 28, 2006, the United States Magistrate Judge issued a report and recommendation on Wall's claims.  The magistrate judge recommended that all of Wall's claims be dismissed with prejudice.  On each of the grounds stated in his original petition for *habeas corpus*, Wall objects to the magistrate judge's recommendation of dismissal.

**II.   STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 prohibits a federal court from granting a state prisoner's application for a writ of *habeas corpus* with respect to claims adjudicated on the merits in state court unless the state court adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court

9

proceeding. *See* 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision involves an unreasonable application of federal law if the state court unreasonably applies the correct governing legal principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 412; *Hill*, 210 F.3d at 485. The state court's findings of fact are entitled to a presumption of correctness, and they can be rebutted only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**III.  DISCUSSION**

   **A.   Competency**

   Wall's first argument is that the trial court erred in finding him competent to stand trial. Wall asserts that, under Louisiana law, the trial court erred by relying solely on the medical testimony to find him competent. Wall raised this issue on direct appeal, alleging that the trial court failed to consider whether Wall was able to assist his counsel and

10

understand the charges and proceedings, and instead relied only on medical testimony. The appeals court found that the trial court had made its competency determination after defense counsel cross-examined the doctors on Wall's ability to understand the proceeding and assist his counsel. The appeals court determined that the trial court's competency ruling was not an abuse of discretion or contrary to state law.

A reviewing federal court need not conduct a *de novo* review of the state court's determination of competency to proceed. *See Moody v. Johnson*, 139 F.3d at 481 (citing *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997)). The court should conduct an evidentiary hearing to determine whether a petitioner was competent at the time of trial only if the petitioner makes a showing by clear and convincing evidence that raises threshold doubts as to his competency. *Carter*, 131 F.3d at 460. When federal *habeas* is sought on the ground that the defendant was in fact incompetent at the time of trial, the initial burden is substantial.[1] *Carter*, 131 F.3d at 460 (citing *Enriquez v.*

---

[1]Indeed, Wall's claim is that the trial court erred in determining that he was competent to stand trial. Wall does not make the separate and distinct claim that state procedures were inadequate to ensure that he was competent to stand trial. These are two contexts in which the issue of competency may arise. Several of the cases cited by Wall in his Petition for Writ of Habeas Corpus, namely *Pate v. Robinson*, 383 U.S. 375, 385 (1966) and its progeny, arose in the context of the latter claim and are

*Procunier*, 752 F.2d 111, 114 (5th Cir. 1984)).  Furthermore, the question of competency to stand trial is a question of fact. *Patterson v. Cockrell*, 69 Fed. Appx. 658, 2003 WL 21355999 at *4 (5th Cir. 2003) (citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983)).  Thus, under AEDPA, the trial court's determination of Wall's competency is presumed correct, and this Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. §2254(d)(2); see *also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), cert. denied, 532 U.S. 1039 (2001).

A defendant is mentally competent when he has the "present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceeding . . . against him." *Dusky v. United States*, 362 U.S. 402 (1960); *Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998).  The Supreme Court also held in *Medina v. California*, 505 U.S. 437 (1992), that a state may presume in its laws that the defendant is competent to proceed and require the defendant to bear the burden of proving his incompetence by a preponderance of the evidence.  *Id.* at 449; *Meredith v. Cain*,

---

therefore inapposite.

2005 WL 1400453 at *7 (E.D. La. 2005).  Louisiana's law does just this: it presumes that a defendant is competent and the defendant bears the burden of proving his incapacity to stand trial.  *State v. Hernandez*, 735 So. 2d 888, 893 (La. App. 5 Cir. 05/19/99); *State v. Lott*, 671 So. 2d 1182, 1186 (La. App. 2 Cir. 04/03/96).

Each of the psychiatric experts who examined Wall prior to the hearing concluded that he was competent to stand trial and was capable of understanding the proceedings and aiding in his defense.  State R. Vol. 5 of 7, Sanity Hearing Transcript, 3/5/97.  Dr. Richard P. Strobach testified that he felt Wall had suffered from marijuana abuse and possibly a brief psychiatric disorder.  *Id.* at p. 4.  Dr. Strobach stated that Wall's belief that he was being stalked, if proven true, would indicate a delusional disorder.  The doctor indicated, however, that there was no evidence to substantiate the alleged delusion.  *Id.* at pp. 4-5.  Dr. Strobach opined that while Wall's sixth grade education limited his ability to understand legal terms, he was able to go over the facts of the situation and aid in his defense.  *Id.* at p. 5.  Dr. Strobach also confirmed, upon questioning by the trial court, that Wall was not on medication and did not require medication.  *Id.* at p. 6.  Dr. James B. Denney also testified that Wall was competent and capable of assisting in his defense. *Id.* at p. 7.  His testimony was similar to that of Dr. Strobach

and both doctors reached the same conclusion.  *Id.*  After hearing
the testimony of both psychiatrists, the trial court found Wall
competent to proceed.

The two doctors both testified that Wall understood the
charges, understood the gravity of the proceedings, and
understood the need to assist his counsel.  The doctors also
resolved that, although limited in education, he was capable of
understanding and assisting his counsel with a defense.  The
trial court, apportioning a reasonable weight to these factors,
determined that Wall was competent to stand trial.  In light of
the testimony of the psychiatrists at the competency hearing, the
Court finds that the trial court's competency ruling was not
based on an unreasonable determination of the facts.  Wall is
therefore not entitled to relief on this claim.


**B.   Victim Character Evidence**

Wall's second argument is that the trial court erred in
excluding evidence of Wall's complaints to authorities that Lee
had previously been stalking and harassing him.  Wall argues that
the exclusion of this evidence deprived him of the right to
present the theory that he was justified in his belief that he
needed to defend himself against the victim.

The Magistrate Judge found that there was no indication that

14

Wall's trial was rendered unfair or that the trial judge's evidentiary ruling was "extreme error."  Wall's objection was substantially the same as his original petition.  The Court finds no error in the Magistrate Judge's determination.  Accordingly, Wall is not entitled to relief on this claim.

      C.    *Brady* Claim

    Wall argues that the state failed to disclose during discovery the full content of a statement made by Wall to Jan Yarborough, secretary and dispatcher at the Kentwood Police Department.  When discussing the killing of Lee, Wall allegedly told Yarborough "I don't have to look over my shoulder any longer, I just killed the mother f***er." *See* Trial Tr. at 228. It is uncontroverted that the profane portion of this statement was not disclosed to the defense before trial.  Wall argues that the nondisclosure led to surprise at trial and, because the language implied anger, affected his insanity and justification defenses.  As a result, Wall alleges that the trial court erred in denying his counsel's motion for a mistrial based on the state's failure to tender the entire oral statement of Yarborough.

    The Magistrate Judge found that Wall was not denied a fair trial due to the late disclosure of the profanity portion of

Wall's statement as recalled by Yarborough at trial.  Wall's objection to this finding was substantially the same as his original petition.  The Court finds no error in the Magistrate Judge's determination.  Accordingly, Wall is not entitled to relief on this claim.

### D.    Sufficiency of the Evidence

Wall argues that the evidence brought by the state at trial was insufficient to support his conviction for second degree murder.  Wall contends that he proved at trial by a preponderance of the evidence that he was insane at the time of the shooting. As such, he argues that the state failed to prove beyond a reasonable doubt that the killing was not justified under Louisiana law.

The Magistrate Judge found that the state had successfully established the element of intent and met its burden of proof in establishing that Wall committed second degree murder.  The Magistrate Judge further found that the evidence was sufficient for a reasonable jury to conclude that Wall intentionally shot and killed Lee.  Wall's objection to the Magistrate Judge's findings was substantially the same as his original petition. The Court finds no error in the Magistrate Judge's determination. Accordingly, Wall is not entitled to relief on this claim.

16

**E.    Wrongful Instruction by Prosecutor**

Wall argues that the prosecutor wrongly instructed the jury that drug-induced delusions did not constitute insanity under Louisiana law.  This issue was raised on collateral review in the state court.  The Magistrate Judge found that Wall failed to establish that the state court's denial of relief on this claim was contrary to or an unreasonable application of federal law. Wall's objections to the Magistrate Judge's findings are substantially the same as his original petition.  The Court finds no error in the Magistrate Judge's determination.  Accordingly, Wall is not entitled to relief on this claim.

**F.   Erroneous Instructions by Court**

Wall contends that the trial court gave two erroneous instructions.  First, Wall argues that the instruction that the jury must presume that the defendant intended the consequences of his acts heightened the burden of proving insanity.  Second, Wall contends that the trial court erred by failing to instruct the jury that reasonable doubt may be established by a lack of evidence.

As to the first instruction, the Magistrate Judge found that the allegedly erroneous instruction was never given by the trial court.  Wall's objection to this finding merely restates his

17

original petition, and does not address this defect.  The Court
has reviewed the record and finds that the Magistrate Judge was
correct.  Accordingly, Wall is not entitled to relief on his
first erroneous instruction claim.

As to the second erroneous instruction claim, Wall again
misrepresents the instructions given by the trial court.  Wall
argues that the court erred in failing to instruct the jury that
reasonable doubt may arise from a lack of evidence.  In fact, the
trial court instructed the jury that "[t]he burden is only the
State to prove the defendant's guilt beyond a reasonable doubt,
and considering the evidence, you must give the defendant the
benefit of every reasonable doubt arising out of the evidence or
out of the lack of evidence."  *Id.* at 663-64.  This instruction
specifically explains that a reasonable doubt may arise out of a
lack of evidence.  Accordingly, Wall is not entitled to relief on
his second erroneous instruction claim.


**G.  Discrimination in the grand jury selection process**

Wall argues that the grand jury that issued that indictment
against him was unconstitutionally impaneled because African-
Americans were systematically excluded from being grand jury
foremen in Tangipahoa Parish before and during Wall's indictment
process.  The record indicates that Wall is Caucasian.  State R.

18

Vol. 1 of 7, Arrest Report, 7/26/96.  Wall brought this argument
on collateral appeal in the state courts.  The Magistrate Judge
found that the state courts' denial of relief on these claims was
not contrary to or an unreasonable application of Supreme Court
law.  Wall's objections to the findings of the Magistrate Judge
were substantially the same as his original petition, except that
Wall now requests an evidentiary hearing to prove the provenance
of the documents he previously submitted and the issuance of
subpoenas in support of his petition.  The Magistrate Judge
reviewed Wall's submissions on this issue and correctly found
that Wall had made no showing of intentional race or gender
discrimination in the selection of his grand jury foreperson
under *Guillory v. Cain*, 303 F.3d 647 (5th Cir. 2002).  Further
evidentiary inquiry is therefore unnecessary.  Accordingly, Wall
is not entitled to relief on this claim.

### H.  Ineffective Assistance of Counsel

Wall next argues that he received ineffective assistance of
counsel for three reasons: (1) his counsel failed to request, and
the trial court did not give, a limiting instruction on the
state's impeachment of Doris Wall Brown by use of her prior
conviction; (2) his counsel failed to move to quash the allegedly
defective indictment addressed in his claim for discrimination in

the grand jury process; and (3) his counsel failed to object to the inference language in the specific intent charge addressed in Wall's first erroneous instruction claim.

In order to succeed on a claim for ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that the deficiency affected his defense. *See United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The requisite deficiency will be found only when counsel's performance is objectively unreasonable. *See id.* (quoting *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995)).

## 1. Limiting Instruction

Wall contends that his attorney erred in failing to request a limiting instruction on the use of Doris Wall Brown's previous conviction to impeach her testimony about the victim. The Magistrate Judge found that Wall's claim without merit. The content of Wall's objection is substantially the same as that of his original petition. The Court finds no error in the Magistrate Judge's determination that the failure to request a limiting instruction did not constitute ineffective assistance of counsel. Accordingly, Wall is not entitled to relief on this claim.

20

### 2. Failure to file motion to quash indictment

Wall argues that his attorney's failure to file a motion to quash his allegedly-defective indictment constituted inadequate assistance of counsel.  The Court notes that Wall has not brought even a prima facie showing that the grand jury that indicted him was affected by discrimination.

A pretrial motion of the type sought by Wall is typically within the professional judgment afforded counsel.  *See United States v. Lewis*, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986) (citations omitted); *see also Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965) (citation omitted).  Wall's counsel may have chosen not to make a motion to quash for strategic reasons. Furthermore, there is no showing that Wall's counsel was in possession of any information suggesting that the grand jury process was tainted by a pattern of discrimination.  Accordingly, Wall is not entitled to relief on this claim.

### 3. Failure to object to specific intent charge

As discussed *supra*, the Magistrate Judge correctly found that the instruction to which Wall argues his attorney failed to object was not given at trial.  Since the instruction was not given, Wall's claim based on his attorney's failure to object to

it is groundless.  The Court therefore overrules the objection to the report and recommendation.

## III. CONCLUSION

For the reasons stated above, Wall's petition for *habeas corpus* relief is DISMISSED with prejudice.

New Orleans, Louisiana, this ___29th___ day of September, 2006.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

22