UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES WALL | CIVIL ACTION |
| VERSUS | NO: 03-1641 |
| BURL CAIN | SECTION: R |

**<u>ORDER AND REASONS</u>**

Before the Court are (1) the mandate of the United States Court of Appeals for the Fifth Circuit to conduct further proceedings consistent with its opinion, R. Doc. 33, and (2) petitioner's motion for summary judgment. R. Doc. 31, which was filed before the Court of Appeals entered its amended judgment. For the following reasons, the Court DENIES the motion and issues this order concerning further proceedings.

**I.  BACKGROUND**

Petitioner Charles Wall was convicted in 1997 of second-degree murder in the 21st Judicial District Court, Tangipahoa Parish, Louisiana. He is currently serving a life sentence. On June 6, 2003, after exhausting his state remedies on direct appeal and in collateral proceedings, Wall filed a petition for a

writ of habeas corpus with this Court.  R. Doc. 21.  Wall raised eleven grounds for relief in his petition.  Of particular relevance here, Wall alleged in Claim Nine that his conviction was obtained in violation of the Equal Protection Clause of the Fourteenth Amendment because Tangipahoa Parish wrongfully excluded African-Americans from serving as foreperson of the grand jury in his case.  *See* Petition, R. Doc. 1 at 58.

The magistrate judge issued a Report and Recommendation on August 28, 2006, finding that Wall was not entitled to relief on any of the eleven grounds and recommending that his petition be dismissed with prejudice.  *See* R. Doc. 18 at 44.  Upon Wall's objection to the magistrate's report, this Court reviewed the record, found that all of Wall's claims were meritless, and dismissed the petition.  *See* R. Doc. 21.

On April 3, 2009, the Fifth Circuit vacated this Court's judgment as to Wall's claim of racial discrimination in the grand jury foreperson selection process and remanded the case for further proceedings.  Mandate, R. Doc. 33-1 at 5.  The court of appeals found that inconsistencies in this Court's factual findings necessitated vacatur.  *Id*. at 4-5.  Of particular concern was the magistrate judge's treatment of supplemental evidence submitted by Wall.  In support of his claim of racial discrimination, Wall submitted statistical data of unknown origin and authenticity, purporting to show that African-Americans have

been under-represented among grand jury forepersons in Tangipahoa Parish. R. Doc. 10. The magistrate judge permitted Wall to expand the record, R. Doc. 11, and the State did not file an objection.

In considering whether Wall had established a *prima facie* case of racial discrimination, the magistrate judge assumed that Wall's statistical information was authentic and admissible. R. Doc. 18 at 37. She found that none of the information helped Wall because it did not contain any indication of the race or gender of the listed forepersons. *Id.* As the magistrate judge noted, however, one portion of Wall's submission *did* contain race and gender information for the listed forepersons. *See* R. Doc. 10 at 12-13. The magistrate judge nevertheless refused to consider this potentially relevant portion of Wall's submission on the ground that "the exhibit does not indicate from where the information was obtained." R. Doc. 18 at 37 n.75. The Fifth Circuit found that the inconsistency between the magistrate judge's assumption that the supplemental information was authentic, on the one hand, and her refusal to consider the chart containing race and gender information, on the other hand, undermined the recommendation that Wall's claim should be dismissed. In addition, the Fifth Circuit specifically noted, apparently with concern, that "[e]xamination of Wall's documents indicates that neither list specifies the source of the included

information." Because this Court relied on the magistrate judge's report when it entered judgment, the Fifth Circuit vacated the judgment as to Wall's equal protection claim and remanded for further proceedings. At the same time, the appeals court also specifically declined to "express [any] views as to the admissibility or probative value of Wall's documents, whether Wall has established a *prima facie* case regarding the instant claim, or the ultimate outcome of the proceeding." Mandate, R. Doc. 33-1 at 5.

After the Fifth Circuit entered its initial ruling but before withdrawing it and submitting an amended ruling, Wall filed a motion for summary judgment, arguing that he is entitled to judgment on his Fourteenth Amendment grand jury claim. The Court rules as follows.

**II. PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

    **A. Legal Standard**

Summary judgment is available in habeas corpus proceedings to the extent that the procedure does not conflict with any statutory provision or with the Rules Governing Section 2254 Cases. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274, 287 (2004); RULES GOVERNING SECTION 2254 CASES, Rule 11. As a general matter, the principles and procedures that control the

disposition of summary judgment motions in ordinary civil cases "appl[y] with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). Accordingly, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see generally* 1 FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE §§ 16.1, 17.3 (5th ed. 2005).

### B. Discussion

Wall, as both the moving party and the party who bears the ultimate burden of proof, must at the very least make out a *prima facie* case of racial discrimination to show that he is entitled to judgment as a matter of law. *See Castaneda v. Partida*, 430 U.S. 482, 493-95 (1977). To make out a *prima facie* case, he must show that: (1) the group that was allegedly discriminated against is a distinct class capable of being singled out for different treatment under the laws; (2) the group was substantially under-represented among grand jury forepersons in Tangipahoa Parish over a significant period of time; and (3) the procedure for selecting grand jury forepersons in Tangipahoa Parish was susceptible to abuse. *See Rose v. Mitchell*, 443 U.S. 545, 565 (1979); *Rideau v. Whitley*, 237 F.3d 472, 485 (5th Cir. 2000).

The Court finds that there are no issues of fact as to the

first and third elements. Wall is asserting a discrimination claim on behalf of African-American members of the grand jury venire who were allegedly excluded from serving as foreperson. As recognized in this Court's September 2006 Order adopting the magistrate judge's Report and Recommendation, he has standing to do so. *Campbell v. Louisiana*, 523 U.S. 392, 400 (1998) (holding that white defendants have third-party standing to challenge discrimination against black persons in the grand jury selection process). "There is no question, of course, that [African-Americans] are members of a group recognizable as a distinct class capable of being singled out for different treatment under the laws." *Rose*, 443 U.S. at 565. Moreover, numerous courts have recognized that the statutory procedure for selecting grand jury forepersons that was in place at the time Wall was indicted "was subject to abuse according to subjective criteria which may include race and sex." *State v. Cosey*, 779 So. 2d 675, 682 (La. 2000); *see also State v. Langley*, 813 So. 2d 356, 371 (La. 2002); *Guice v. Fortenberry* ("*Guice I*"), 661 F.2d 496, 503 (5th Cir. 1981) (*en banc*). *Cf. Mosley v. Dretke*, 370 F.3d 467, 478 (5th Cir. 2004) (materially identical Texas procedure); *Johnson v. Puckett*, 929 F.2d 1067, 1072 (5th Cir. 1991) (materially identical Mississippi procedure).

With respect to the second element, Wall must show that African-Americans were substantially under-represented among

grand jury forepersons in Tangipahoa Parish over a significant period of time. As noted, Wall has submitted some information in support of his claim. He has established neither the authenticity nor the source of that information, however, and it is therefore inadmissible for summary judgment purposes. *See* FED. R. EVID. 901, 902; *Railroad Management Co., LLC v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 219-20 (5th Cir. 2005). Because Wall has not offered any other competent evidence in support of the second element of his *prima facie* case, the Court finds that he has not carried his burden of demonstrating that he is entitled to judgment as a matter of law. His motion must be denied so that further inquiry can be made into the authenticity of his supporting documents.

## III. FURTHER PROCEEDINGS

Wall's petition presents several procedural issues that must be addressed before the Court will be in a position to rule on the merits of Wall's equal protection claim. The Court turns to those issues now.

### A. Procedural Default

In a memorandum of law filed contemporaneously with the answer, respondent argued that Wall's equal protection claim was procedurally defaulted because Wall did not move to quash the

indictment at the time of his original trial. R. Doc. 4 at 20. The magistrate judge rejected that argument and ordered respondent to file a supplemental memorandum addressing the merits of the equal protection claim. R. Doc. 15 at 1-2. Respondent then submitted additional briefing, but his memorandum merely reiterated the procedural default argument and did not address the merits of Wall's claim. R. Doc. 16. The Court will therefore explain once more why Wall's equal protection claim is not procedurally defaulted for the purposes of federal habeas review.

It is undisputed that Wall did not move to quash his indictment at the time of trial. The Court will also assume, as respondent urges, that the state habeas court could have dismissed Wall's equal protection claim on that ground. *See* LA. CODE. CRIM. P. art. 930.4(B) ("If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief."); *Deloch v. Whitley*, 684 So. 2d 349 (La. 1996) (per curiam). *But cf. Carlin v. Cain*, 706 So. 2d 968 (La. 1998) (per curiam) (noting that dismissal under LA. CODE. CRIM. P. art. 930.4(B)-(E) is discretionary rather than mandatory).

Nonetheless, "[t]he mere existence of a procedural default, without more, does not deprive federal courts of jurisdiction." *Shaw v. Collins*, 5 F.3d 128, 131 (5th Cir. 1993). A procedural

bar will defeat federal habeas review only if the last state court to review the prisoner's claim "actually relied on the procedural bar as a separate and independent reason for disposing of the case." *Id.* When, as here, the basis for the state court's decision is not perfectly clear, the Supreme Court has created a presumption to ease the federal courts' burden of inquiry. If (1) the decision "fairly appears to rest primarily on federal law or to be interwoven with such law," that is, if there is "good reason to question whether there is an independent and adequate state ground for the decision," and (2) "the state court does not plainly state that it is relying on an independent and adequate state ground," then the federal habeas court may disregard the procedural bar for purposes of federal review. *Coleman v. Thompson*, 501 U.S. 722, 737, 739 (1991); *see also Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008); *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999); *Williams v. Cain*, 125 F.3d 269, 275 (5th Cir. 1997). "The key [to this inquiry] is not the clarity of the state court's language, or even whether the state court addressed the merits of the federal claim, but whether the state court may have based its decision on its understanding of federal law." *Young v. Herring*, 938 F.2d 543, 553 (5th Cir. 1991) (en banc).

In this case, the last reasoned state court decision to

address Wall's equal protection claim, *see Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), held that "[a] review of petitioner's seven (7) claims of error, the transcript of the record, and the memorandum in support of the application reveal[s] that, as a matter of law, there is no merit to any of the assigned claims." St. Rec. 7 of 7, Judgment on Application for Postconviction Relief, No. 78826, 8/8/01. As the magistrate judge found, this language appears to be a rejection of Wall's claims on the merits rather than on procedural grounds. Several factors reinforce this conclusion. First, the judgment was entered before the state had been given an opportunity to raise procedural defenses or to file an answer to Wall's application. Although the Louisiana Code of Criminal Procedure permits a court to invoke a procedural bar on its own motion, *see* La. Code. Crim. P. art. 930.4(B), the court must first notify the prisoner of its intent to do so and give him an opportunity to explain his failure to raise the claim in the earlier proceedings, *see id.* art. 930.4(F); *State ex rel. Cormier v. State*, 680 So. 2d 1168, 1169 (1996) (per curiam). The court must also determine whether the procedural default was excusable and, if it finds that it was, "consider the merits of the claim." La. Code. Crim. P. art. 930.4(F). In Wall's case, the state court did not follow this procedure.

Second, the state court "dismissed" Wall's entire

application on the ground that Wall's claims lacked merit "as a matter of law." This language appears to track Louisiana Code of Criminal Procedure article 928, which provides for dismissal of an application for failure to state a claim, rather than article 930.4(B), which provides for denial of a claim as procedurally barred. *Compare* LA. CODE CRIM. P. art. 928 ("The application may be dismissed without an answer if the application fails to allege a claim which, if established, would entitle the petitioner to relief."), *with id.* art. 930.4(B) ("If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief."). Third, Wall's memorandum in support of his application, which the state court expressly cited in support of its decision, focused exclusively on the merits of the federal equal protection claim. It did not discuss the procedural default, and, as noted, the state did not raise the issue in a motion.

In light of the plain language of the state court decision and the surrounding circumstances, the Court finds that "the state court may have based its decision on its understanding of federal law." *Young*, 938 F.2d at 553. The Court must therefore presume, in the absence of a clear and express statement to the contrary, that the judgment did not rest on an independent and adequate state procedural ground. Wall's equal protection claim

-11-

is amenable to federal review on the merits.

### B. Section 2254(e)(2)

As discussed above, Wall cannot make out a *prima facie* case of discrimination unless his supplemental evidence is considered. Because that evidence was not presented to the state courts, this Court must determine whether AEDPA prohibits further development of the record before deciding how to proceed with the claim. Title 28, United States Code, Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
>     (A)  the claim relies on--
>
>         (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>         (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>     (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The Supreme Court has interpreted this provision to cover all efforts to introduce new evidence--including through discovery and court-directed expansion of the record--irrespective of whether the petitioner seeks an actual

evidentiary hearing. *See Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (per curiam); *Holland v. Jackson*, 542 U.S. 649, 653 (2004) (per curiam); *Shelton v. Quarterman*, 294 Fed. Appx. 859, 868 (5th Cir. 2008) (unpublished).

It does not appear that Wall can show that his claim falls within one of the narrow exceptions set forth in section 2254(e)(2)(A). Thus, if section 2254(e)(2) applies to Wall's equal protection claim, his supplemental evidence may not be considered and there can be no further development of the record. As the Supreme Court has explained, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *(Michael) Williams v. Taylor*, 529 U.S. 420, 432 (2000). In other words, section 2254(e)(2) does not apply at all when the prisoner diligently attempted to develop the factual basis of his claim in state court, even if he was ultimately unable to discover the relevant facts. Diligence, in turn, "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435; *see also Conner v. Quarterman*, 477 F.3d 287, 293 (5th Cir. 2007); *Roberts v. Dretke*, 381 F.3d 491, 500 (5th Cir. 2004); *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000).

Applying the diligence standard to the facts of this case, the Court finds that section 2254(e)(2) does not bar further development of the record. Wall argued in the memorandum attached to his application for state post-conviction relief that Tangipahoa Parish had systematically excluded African-Americans from serving as grand jury forepersons. In support of his claim, he submitted documents purporting to show that there was an absolute disparity of 20.28% between the percentage of registered African-American voters in Tangipahoa Parish and the percentage of African-American grand jury forepersons over a twenty-nine year period. Although Wall admitted that he did not have statistics for the six years leading up to his own indictment, he sought to obtain that information by filing a petition for subpoena duces tecum contemporaneously with his application for post-conviction relief. The petition requested that the Clerk of Court for Tangipahoa Parish be ordered to produce six specific categories of information:

(a) All information, materials, memoranda, and reports concerning the selection process pertaining to all grand juries in the year 1970 thru 1997 that are in the possession of the Clerk of Court;

(b) An actual copy of the source list from the general venires chosen in 1970 thru 1997;

(c) Copies of any lists used subsequently to the picking of the general venire in the selection process from 1970 thru 1997;

(d) The completed questionnaires of all persons qualified, disqualified, excused or exempted from the general

venire during the years of 1970-1997, sent out to the
public by the Clerk of Court;

(e) All court minutes pertaining to any grand jury
selections during the years of 1970 thru 1997; and

(f) All names of the District Judges which chose the grand
jury foreperson for the terms from 1970 thru 1997.

The state court dismissed Wall's application for post-conviction relief without ruling on the petition for subpoena duces tecum.

The Court finds that Wall was diligent in attempting to develop the factual basis for his equal protection claim. Although a mere request for an evidentiary hearing is not sufficient to show diligence, *Conner*, 477 F.3d at 293, Wall explained to the state court precisely what information he sought and how it was relevant to his claim. It does not appear that he could have obtained the information from another source, nor does it appear that he could have used different information to support his equal protection claim. Under these circumstances, Wall's efforts to obtain information from the Clerk of Court for Tangipahoa Parish demonstrated sufficient diligence to meet the requirements of section 2254(e)(2).

### C. Further Development of the Record

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550

U.S. 465, 468 (2007). That discretion is constrained, however, by the Rules Governing Section 2254 Cases and by Supreme Court and circuit precedent. In the Fifth Circuit, it is well-established that an evidentiary hearing or some other procedure for developing the facts is mandatory "[w]hen there is a factual dispute, that, if resolved in the petitioner's favor, would entitle [him] to relief and the state has not afforded the petitioner a full and fair evidentiary hearing." *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) (internal quotation marks and brackets omitted); *accord Landrigan*, 550 U.S. at 474; *Richards v. Quarterman*, 556 F.3d 553, 562-63 (5th Cir. 2009); *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). It is equally well-established that, even if these conditions are met, a full-fledged evidentiary hearing is not necessarily required. The district court "may employ a variety of measures"--including discovery and court-ordered expansion of the record--"in an effort to avoid the need for an evidentiary hearing." *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *see also* RULES GOVERNING SECTION 2254 CASES, Rules 6-8.

There is no question that Wall was not afforded a full and fair evidentiary hearing on his equal protection claim. *See Townsend v. Sain*, 372 U.S. 293, 313-14 (1963) ("There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by

the defendant.").

Wall has submitted supplemental documents that address only the second element of his *prima facie* case: whether he can show that African-Americans were substantially under-represented among grand jury forepersons in Tangipahoa Parish over a significant period of time. *See Rose*, 443 U.S. at 565. Several of these documents indicate that the percentage of registered African-American voters in Tangipahoa Parish ranged between 21.42% and 25.97% over the thirty years preceding Wall's indictment. Another document purports to list the name and race of every grand jury foreperson to serve in Tangipahoa Parish between 1970 and 1991. The document reflects that only one of the forty-five forepersons, or 2.22%, was African-American. The document does not contain data covering the six-year period leading up to Wall's indictment. This gap in the data may or may not prove significant.[1] Finally, another of the documents submitted by Wall suggests that between 1960 and 2001, only one of the eighty-four forepersons, or 1.19%, was African-American.

As noted above, however, these data have not been verified or authenticated, and the six-year gap makes the data incomplete. As the Fifth Circuit noted, no evidence has been submitted that

---

[1] On one hand, even the assumption that three of the eleven missing forepersons were African-American would only bring the total percentage to 7.14%. On the other hand, if *all* were African-American, the percentage would be 21.4%.

"specifies the source of the included information."  The Court
therefore expresses no opinion as to the probative value of the
information at issue and finds that further factual development
is necessary.  Because Wall's claims hinge on the validity of
information that ought to be easily verified, it is appropriate
to proceed without a full, in-person evidentiary hearing for the
time being.  Instead, petitioner will be afforded an opportunity
to submit an affidavit or other proof establishing the source and
basis for the documents he has submitted.  Respondent will be
ordered to admit or deny the authenticity and correctness of the
information contained in Wall's supplemental documents, to
respond to the merits of Wall's claim, and to submit its own
proof concerning the burden it bears under *Guillory v. Cain*, 303
F.3d 647, 650 (5th Cir. 2002), to rebut petitioner's *prima facie*
case--assuming it is made—-by showing that legitimate, race-
neutral criteria were used in the selection process.  *See* RULES
GOVERNING SECTION 2254 CASES, Rule 7(c).  Once those submissions are
received, the Court will take further appropriate action.

**III. CONCLUSION**

For the foregoing reasons, Wall's Motion for Summary
Judgment is DENIED.

IT IS ORDERED that, no later than July 31, 2009, Wall must
file in this Court and serve upon opposing counsel his own or

other affidavit(s) and/or any other proof sufficient to establish the source, maker, basis, and authenticity of the documents he has previously submitted concerning grand jury foreperson statistics, and any other evidence he wishes the Court to consider.

IT IS FURTHER ORDERED that, no later than August 31, 2009, Cain must file and serve his own written submissions to this Court that (a) admit or contest, by submitting countervailing affidavits or other proof, the authenticity and/or correctness of the information contained in Wall's submissions; (b) assuming arguendo that Wall has by that time established his *prima facie* case, submit to the Court affidavit(s) or any other proof sufficient to rebut petitioner's *prima facie* case as described in *Guillory v. Cain*, 303 F.3d 647 (5th Cir. 2002); and (c) address the merits of Wall's equal protection claim in a memorandum of fact and law.

Wall is hereby granted leave to file to respond to Cain's submissions within 15 days of receiving those documents.

New Orleans, Louisiana, this __13th__ day of July, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE