UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES WALL                                CIVIL ACTION

VERSUS                                      NO: 03-1641

BURL CAIN                                   SECTION: R(4)


**ORDER AND REASONS**

Before the Court is petitioner Charles Wall's motion for summary judgment.[1]  Wall's motion is DENIED.


I.  **BACKGROUND**

Charles Wall was indicted in Tangipahoa Parish, Louisiana in September 1996 on charges of second-degree murder.  He was convicted in 1997 and is currently serving a life sentence.  On June 6, 2003, after exhausting his state remedies on direct appeal and in collateral proceedings, Wall filed a petition for writ of *habeas corpus* with this Court.[2]  Wall raised eleven grounds for relief in his petition.  Of relevance here, Wall alleged in Claim Nine that his conviction was obtained in violation of the Equal Protection Clause of the Fourteenth

---

[1] (R. 31.)

[2] (R. 21.)

Amendment because Tangipahoa Parish wrongfully excluded African-Americans from serving as foreperson of the grand jury in his case.[3]

On August 28, 2006, the magistrate judge issued a report and recommendation finding that Wall was not entitled to relief on any of the eleven grounds and recommending that his petition be dismissed with prejudice.[4] Upon Wall's objection to the magistrate's report, this Court reviewed the record, found that all of Wall's claims were meritless, and dismissed the petition.[5]

On April 3, 2009, the Fifth Circuit vacated this Court's judgment as to Wall's claim of racial discrimination in the grand jury foreperson selection process and remanded the case for further proceedings.[6] The court of appeals found that inconsistencies in the Court's factual findings necessitated further proceedings.[7] Of particular concern was the magistrate judge's treatment of supplemental evidence submitted by Wall. In support of his claim of racial discrimination, Wall submitted statistical data purporting to show that African-Americans have been underrepresented among grand jury forepersons in Tangipahoa

---

[3] (R. 1 at 47, 58.)

[4] (R. 18 at 44.)

[5] (R. 21.)

[6] (R. 33.)

[7] (*Id.* at 4-5.)

Parish.[8]  The magistrate judge permitted Wall to expand the record,[9] and the State did not file an objection.

In considering whether Wall had made out a *prima facie* case of racial discrimination, the magistrate assumed that Wall's statistical information was authentic and admissible.[10]  She found that none of the information helped Wall because it did not contain any indication of the race or gender of the listed forepersons.[11]  As the magistrate noted, however, one portion of Wall's submission *did* contain race and gender information for the listed forepersons.[12]  The magistrate nevertheless refused to consider this potentially relevant portion of Wall's submission on the ground that "the exhibit does not indicate from where the information was obtained."[13]  The Fifth Circuit found that the inconsistency between the magistrate's assumption that the supplemental information was authentic, on the one hand, and her refusal to consider the chart containing race and gender information, on the other hand, undermined the recommendation that Wall's claim should be dismissed.  Because this Court relied

---

[8]    (R. 10.)

[9]    (R. 11.)

[10]   (R. 18 at 37.)

[11]   (*Id.*)

[12]   (R. 10 at 12-13.)

[13]   (R. 18 at 37 n.75.)

on the magistrate's report when it entered judgment, the Fifth Circuit vacated the judgment as to Wall's equal protection claim and remanded for further proceedings. At the same time, the Fifth Circuit specifically declined to "express [any] views as to the admissibility or probative value of Wall's documents, whether Wall has established a *prima facie* case regarding the instant claim, or the ultimate outcome of the proceeding."[14]

After the Fifth Circuit entered its initial ruling but before withdrawing it and submitting an amended ruling, Wall filed a motion for summary judgment on his Fourteenth Amendment grand jury claim. On July 13, 2009, the Court denied the motion but ordered Wall to submit "an affidavit or other proof establishing the source and basis" for the statistical information he submitted in support of his motion.[15] Two months later, Wall submitted: (1) grand jury venire lists from February 1973 to September 1975; February 1977 to September 1983; March 1987 to October 1988; and March 1993 to September 1997;[16] (2) grand jury lists from February 1976 to March 1998;[17] and (3) minutes of grand jury selection proceedings from March 1975 to

---

[14] (R. 33 at 4.)

[15] (R. 36 at 18.)

[16] (R. 48, Exs. A14-A44.)

[17] (R. 48, Ex. A3.)

September 1997.[18] In addition, Wall submitted a list reflecting the race and gender of a number of alleged grand jury forepersons from February 1962 to September 1998.[19] The names of the forepersons appear to have been supplied by the Tangipahoa Parish Clerk of Court,[20] and the racial identities appear to have been supplied by the Tangipahoa Parish Registrar of Voters.[21] The Court now considers Wall's motion for summary judgment in light of this evidence.

II. **LEGAL STANDARD**

Summary judgment is available in *habeas corpus* proceedings to the extent the procedure does not conflict with any statutory provision or the Rules Governing Section 2254 Cases.[22] Thus, as a general matter, the principles and procedures that control the disposition of summary judgment motions in ordinary civil cases

---

[18] (R. 48, Exs. A4-A13.)

[19] (R. 48, Ex. B.)

[20] (R. 48, Ex. A2.)

[21] (R. 48, Ex. B.)

[22] *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds*, *Tennard v. Dretke,* 542 U.S. 274 (2004); Rules Governing Section 2254 Cases, Rule 11; *see generally* 1 Fed. Habeas Corpus Prac. & Proc. §§ 16.1, 17.3 (5th ed. 2005).

apply with "equal force" in the context of *habeas corpus* cases.[23]

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24] When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[25] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[26]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed

---

[23] *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), *cert. denied*, 531 U.S. 831 (2000).

[24] Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[25] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

[26] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

verdict if the evidence went uncontroverted at trial.'"[27] The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[28]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[29] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[30] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[31]

---

[27] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

[28] *Id.* at 1265.

[29] *See Celotex*, 477 U.S. at 325.

[30] *Id.* at 324.

[31] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. DISCUSSION**

Wall claims that his conviction was obtained in violation of the Equal Protection Clause of the Fourteenth Amendment because Tangipahoa Parish wrongfully excluded African-Americans from serving as foreperson of the grand jury in his case. It is settled that a criminal conviction "cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which Negroes were excluded by reason of their race."[32] A criminal defendant "is entitled to require that the State not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice."[33] The same rule applies even when discrimination affects only the selection of the grand jury foreperson.[34] Moreover, a white defendant, such as Wall, "has standing to raise an equal protection challenge to discrimination against black persons in the selection of his grand jury."[35] When "sufficient proof of discrimination in violation of the Fourteenth Amendment has been made out and not rebutted, the

---

[32] *Alexander v. Louisiana*, 405 U.S. 625, 628 (1972); *Rose v. Mitchell*, 443 U.S. 545, 551 (1979); *Rideau v. Whitley*, 237 F.3d 472, 484 (5th Cir. 2000).

[33] *Id.* at 628-29.

[34] *Guice v. Fortenberry* (*Guice II*), 661 F.2d 496, 499 (5th Cir. 1981); *Mosley v. Dretke,* 370 F.3d 472, 476 (5th Cir. 2004).

[35] *Campbell v. Louisiana*, 523 U.S. 392, 397-98 (1998).

Supreme Court uniformly has required that the conviction be set aside and the indictment returned by the unconstitutionally constituted grand jury be quashed."[36]

As both the party moving for summary judgment and the party who bears the ultimate burden of proof, Wall must at the very least make out a *prima facie* case that the procedure in Tangipahoa Parish for selecting grand jury forepersons "resulted in substantial underrepresentation" of African-Americans.[37] To make out his *prima facie* case, Wall must show that: (1) the group that was allegedly discriminated against is a recognizable, distinct class singled out for different treatment; (2) the group was substantially underrepresented among grand jury forepersons in Tangipahoa Parish over a significant period of time; and (3) the procedure for selecting grand jury forepersons in Tangipahoa Parish was susceptible to abuse or not racially neutral.[38] The Court has already determined that Wall's equal protection claim is amenable to federal review on the merits;[39] that African-Americans are a recognizable and distinct class

---

[36] *Rideau*, 237 F.3d at 484.

[37] *Rose*, 443 U.S. at 565 (citing *Castaneda v. Partida*, 430 U.S. 482, 493-95 (1977)).

[38] *See Rose*, 443 U.S. at 565; *Rideau*, 237 F.3d at 485.

[39] (R. 36 at 7-15.)

singled out for different treatment;[40] and that the statutory procedure for selecting grand jury forepersons in Tangipahoa Parish at the time Wall was indicted was at least susceptible to abuse.[41] The Court must now determine whether there is a genuine issue of material fact as to the second element.

The Supreme Court "has never announced mathematical standards for the demonstration of 'systematic' exclusion of blacks [from grand juries] but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors."[42] The Fifth Circuit has held that an absolute disparity of 10 percent or less between the percentage of voting age African-Americans and the percentage of African-Americans serving as grand jury forepersons is "insufficient to establish statistical discrepancies worthy of relief."[43] The Fifth Circuit has also found that an absolute

---

[40] *See Rideau*, 237 F.3d at 486.

[41] Until 1999, a trial judge in Tangipahoa Parish had discretion to "select[] the foreperson from the grand jury venire before the remaining members of the grand jury have been chosen by lot." *Campbell*, 523 U.S. at 396-97 (citing Article 413(B) of the Louisiana Code of Criminal Procedure). "As a result, when the Louisiana judge selected the foreperson, he also selected one member of the grand jury outside of the drawing system used to compose the balance of that body." *Id.* at 397. This practice "makes it easier for those to discriminate who are of a mind to discriminate." *Mosley*, 370 F.3d at 478.

[42] *Alexander*, 405 U.S at 630.

[43] *Mosley,* 370 F.3d at 479 (citing *United States v. Maskeny*, 609 F.2d 183, 190 (5th Cir. 1980).

disparity of 13.5 percent may support an inference of discrimination.[44] Although it is clear that "substantial underrepresentation" must persist over a "significant period of time,"[45] neither the Supreme Court nor the Fifth Circuit has set forth clear criteria for determining the *relevant* period of time. The distinction may be important if African-Americans were substantially underrepresented in the distant past but not in the more recent past.[46] The Fifth Circuit has indicated that courts should consider underrepresentation over a period of more than five years,[47] but no Fifth Circuit case appears to have analyzed

---

[44] *See Rideau*, 237 F.3d at 486; *see also Castaneda*, 430 U.S. at 495-96 (absolute disparity of 40.1 percent sufficient to support presumption of discrimination); *Sims v. Georgia*, 389 U.S. 404, 407 (1967) (same; 19.7 percent and 14.6 percent disparities); *Whitus v. State of Georgia*, 385 U.S. 545, 550 (1967) (same; 18 percent disparity); *Jones v. Georgia*, 389 U.S. 24, 25 (1967) (same; 14.7 percent disparity).

[45] *See, e.g.*, *Rose*, 443 U.S. at 565; *Mosley*, 370 F.3d at 476.

[46] *Cf. Rose*, 443 U.S. at 572 n.12 ("Reference to history texts in a case of this kind does not supply what respondents failed to prove. If it were otherwise, one alleging discrimination always would be able to prove his case simply by referring to the history of discrimination within the State.").

[47] *See Guice v. Fortenberry* (*Guice III*), 722 F.2d 276, 280 (5th Cir. 1984) ("Absent stronger evidence that the selection process has been materially changed, we have no trouble holding that the two periods of time [1963 to 1976 and 1976 to 1979] should not be treated separately for the purpose of determining a *prima facie* case."); *Johnson v. Puckett*, 929 F.2d 1067, 1072 (5th Cir. 1991) (holding that state court "could not erase its earlier failure to adhere to federal constitutional requirements merely by . . . complying with both federal and state requirements . . . for five years"); *see also Allen v. Cain*, 64 F. App'x 416, at *2

a period of more than 20 years.[48] The Court limits its inquiry to the 20 years preceding Wall's indictment because potential discrimination before September 1976 has minimal bearing on the selection of a grand jury foreperson in September 1996. Even Wall did not subpoena records from the Clerk of Court for years before 1970,[49] and he has not submitted grand jury lists or minutes of grand jury selection proceedings for years before 1975.[50]

There is evidence that forty-one grand jury forepersons were selected in Tangipahoa Parish from September 1976 to September 1996.[51] Five of these forepersons were identified as African-American by the Tangipahoa Parish Registrar of Voters.[52]

---

(5th Cir. 2003) (rejecting district court's conclusion that substantial underrepresentation between 1976 and 1992 was cured by adequate representation over five years preceding indictment).

[48] *See, e.g.*, *Castaneda*, 430 U.S. at 495-96 (11 years); *Mosley*, 370 F.3d at 479 (11 years); *Rideau*, 237 F.3d at 486 (13 years); *James v. Whitley*, 39 F.3d 607, 610 (5th Cir. 1994) (14 years); *Guice III*, 722 F.2d at 280 (16 years); *Allen*, 64 F. App'x 416, at *2 (16 years); *Johnson*, 929 F.2d at 1072 (20 years).

[49] (*See* R. 44, Ex. 1.)

[50] (R. 48, Exs. A3-A13.)

[51] (R. 48, Ex. B.)

[52] The five African-American forepersons were: Daisy Head (August 1979); Brenda B. Ernst (August 1982); Louis Joseph (September 1992); Dianne H. Briggs (March 1995); and Kenneth Burton (September 1995). (R. 48, Ex. B.) The Registrar of Voters noted that "Brenda B. Ernst," as opposed to Brenda B. Ernest, is African-American. (*Id.*, Ex. B at 4.) The Clerk of Court records reflect that Brenda B. Ernst was in fact the person

Furthermore, five of the forepersons could not be racially identified by the Registrar,[53] and two who were identified as white do not appear to have in fact served as forepersons.[54] In sum, of the thirty-four forepersons for whom reliable information has been presented, 14.7 percent were African-American. In 1996, the year in which Wall was indicted, African-Americans accounted for 25.85 percent of registered voters.[55] Thus, Wall has demonstrated an absolute disparity of 11.15 percent between the

---

who served as grand jury foreperson in August 1982, and the Court treats her as African-American. (*See* R. 48, Exs. A3, A7.)

[53] The Registrar of Voters indicated that no information was available for Joyleen Kell Hevelone (February 1982), Shelly Pittman (February 1983), Brenda J. Carr (February 1984) and Jack R. Rohell (March 1996). (*See* R. 48, Ex. B.) The Registrar further indicated that Jean Dees (February 1977) could not be positively identified. (*Id.*) The Registrar noted that "Evelyn Jean Dees" is white (*id.* at 4), but the Clerk of Court records show that "Jean W. Dees" and not "Evelyn Jean Dees" served as foreperson. (*See id.*, Ex. A5.)
The Registrar of Voters indicated that although "Anthony S. Arone" (February 1978) and "Anthonette L. Mason" (September 1986) could not be positively identified, "Anthony S. Arnone" and "Antoinette L. Mason" were white. (*See id.*, Ex. B at 4.) The Clerk of Court records show that the latter individuals in fact served as forepersons (*see* R. 48, Exs. A3-A5, A9), and thus the Court treats them as white.

[54] The grand jury lists and minutes of selection proceedings indicate that Eugene Jasper Stevens (September 1976) and Roy C. Mitchell (February 1980), each identified by the Registrar of Voters as white, did not in fact serve as forepersons. (*See* R. 48, Exs. A3, A4, A6.) The Clerk of Court records also indicate that Brenda J. Carr (February 1984) did not in fact serve as foreperson (*see id.*, Exs. A3, A7), although in any event the Registrar could not racially identify her. (*See id.*, Ex. B.)

[55] (R. 48, Ex. B.)

-13-

percentage of African-Americans serving as grand jury forepersons and the percentage of voting age African-Americans.  It is doubtful that this disparity is sufficient to support a "statistical discrepanc[y] worthy of relief" in the Fifth Circuit as a matter of law.[56]

Even if an 11.15 percent absolute disparity could support an inference of unconstitutional discrimination in the Fifth Circuit, Wall has not pointed to any "additional factors" supporting such an inference in this case.[57]  To the contrary, although the statutory procedure for selecting grand jury forepersons that was in place at the time Wall was indicted may have been susceptible to abuse, the minutes of the grand jury selection proceedings indicate that a different, race-neutral procedure was often used in practice.  Forepersons were randomly selected from a randomly selected venire on at least seven occasions between 1976 and 1996.[58]  Thus, further factual inquiry taking into account all possible explanatory factors only

---

[56] *Mosley,* 370 F.3d at 479 (holding that absolute disparities less than ten percent are "insufficient to establish statistical discrepancies worthy of relief").

[57] *See Rideau*, 237 F.3d at 487 (declining to decide whether 13.5 percent absolute disparity alone would support presumption of discrimination and considering "additional factors" that "supplement the statistical disparity").

[58] Forepersons were randomly selected from a randomly selected venire in August 1979, February 1980, September 1981, February 1982, August 1982, February 1984 and October 1985.  (R. 48, Exs. A6-A7.)

undermines the inference of systematic unconstitutional discrimination.[59]

Finally, in any event, Wall's statistics are fatally riddled with gaps. The Supreme Court has cautioned that a district court may not draw an inference of discrimination from statistics when it lacks evidence to "perform the calculations and comparisons needed."[60] In *Rose*, testimony that there had never been an African-American foreperson in Tipton County, Tennessee was insufficient to make out a *prima facie* case of discrimination because, *inter alia*, there was no evidence as to the total number of forepersons appointed during the relevant period of time.[61] The Supreme Court did not speculate in the petitioner's favor, and instead reasoned that:

> [g]iven the fact any foreman was not limited in the number of 2-year terms he could serve, and given the inclination on the part of the judge to reappoint, it is likely that during the period in question only a few persons in actual number served as foremen of the grand jury. If the number was small enough, the disparity between the ratio of Negroes

---

[59] *See Hobby v. United States*, 468 U.S. 339, 348 (1984) ("So long as the grand jury itself is properly constituted, there is no risk that the appointment of any one of its members as foreman will distort the overall composition of the array or otherwise taint the operation of the judicial process.").

[60] *Rose*, 443 U.S. at 565; *see also id.* at 571 n.12 (stating that court may not fill gap in proof by reference to history of race relations); *James*, 39 F.3d at 610 ("Without positive proof of the number of grand juries convened and foremen appointed in Ascension Parish between 1965 and 1979, [petitioner] cannot show the degree of underrepresentation required by *Rose*.").

[61] *Rose*, 443 U.S. at 571.

chosen to be foreman to the total number of foremen, and the ratio of Negroes to the total population of the county might not be sufficiently large that it is unlikely that this disparity is due solely to chance or accident.[62]

*Rose* involved a lack of evidence as to the denominator of the ratio of African-Americans chosen to be forepersons to the total number of forepersons.[63] Although this case involves a lack of evidence as to the numerator of this ratio, the result is no different. Without reliable racial data for seven forepersons, the Court cannot perform the calculations necessary to infer that the disparity between the percentage of voting age African-Americans and the percentage of African-Americans serving as forepersons in Tangipahoa Parish was the result of unconstitutional discrimination.[64]

For the reasons stated, Wall has failed to establish the absence of a genuine issue of material fact as to the second element of his *prima facie* case, namely, that African-Americans were substantially underrepresented among grand jury forepersons in Tangipahoa Parish over a significant period of time. Wall's motion for summary judgment must be DENIED.

**IV. CONCLUSION**

---

[62] *Id.* (internal brackets and quotations omitted).

[63] *Id.*

[64] *Id.* at 573.

For the foregoing reasons, Wall's motion for summary judgment is DENIED.

New Orleans, Louisiana, this 21st day of May 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE